THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. YONKERS CONTRACTING COMPANY, INC., HARRY BANKARD, SPENCER A. SNOOK, ERNEST L. BLAKEMAN, LOUIS G. BLACKHALL, EDWARD J. PETRILLO, ARTHUR S. CIPOLLA, THOMAS W. COHILL, HAROLD GUIDOTTI, LENDALL H. NEVINS, ALVIN POTTLE and HARRY POSNER, Respondents.— Appeal by the People: (1) from an order of the County Court, Westchester County, entered October 15, 1964, which dismissed separate indictments against all the defendants, exonerated their bail and directed return of their photographs and fingerprints; and (2) from a resettled order of said court, entered October 20, 1964, which granted the same relief. Appeal from order of October 15, 1964 dismissed; that order was superseded by the resettled order of October 20, 1964. Resettled order of October 20, 1964 modified on the law as follows: (1) by striking out its first decretal paragraph which dismissed all the indictments; (2) by substituting therefor the following new decretal paragraphs: (a) a paragraph dismissing the indictments against the defendants Harry Bankard, Ernest L. Blakeman, Thomas W. Cohill, Harold Guidotti, Lendall H. Nevins and Alvin D. Pottle, with respect to the charges of grand larceny in the first degree; (b) a paragraph dismissing the indictments against the defendants Edward J. Petrillo and Arthur S. Cipolla, with respect to the charges of giving or offering bribes; (c) a paragraph dismissing the indictment against the defendant Louis C. Blackhall, with respect to the charges of taking unlawful fees; and (d) a paragraph denying in all other respects the motions to dismiss the indictments; and (3) by amending accordingly the second and third decretal paragraphs of the order which exonerated the defendants' bail and directed the return of the defendants' photographs and fingerprints. As so modified, the order is affirmed. No issues of fact were considered. We find that sufficient evidence was submitted to the Grand Jury for the return of indictments against those defendants charged with grand larceny in the first degree (cf. *People* v. *Peetz,* 7 N Y 2d 147, 149; *People* v. *Donahue,* 309 N. Y. 6, 7; *People* v. *Hudson Valley Constr. Co.,* 165 App. Div. 626, 631–632, affd. 217 N. Y. 172); against those defendants charged with giving or offering bribes, and against the defendant Blackhall charged with taking unlawful fees. We are also of the opinion that the Attorney-General was authorized to appear before the Grand Jury and to obtain the indictments. The provisions of statute (Executive Law, § 63, subd. 3; Code Crim. Pro., § 10-h) should not be read narrowly, but rather in a sense to accomplish the purpose intended, i.e., to permit the Attorney-General, upon the request of the designated State officers, to prosecute any person charged by them "with the commission of an indictable offense" (Executive Law, § 63, subd. 3). We think that the prosecution of a person for an indictable crime includes the power to secure an indictment against that person. Nevertheless, we believe that on other grounds certain of the indictments must be dismissed. The defendants,

Bankard, Blakeman, Guidotti, Nevins and Pottle, subsequently indicted for grand larceny in the first degree, appeared before the Grand Jury pursuant to subpœna and testified. The defendant Blackhall, subsequently indicted for taking unlawful fees, likewise appeared before the Grand Jury and testified. None of them waived immunity. Though the inquiry before the Grand Jury may have been in the nature of a "John Doe" investigation, it was abundantly clear in this record that the object of the investigation was to uncover any wrongdoing connected with or related to the performance of two contracts: one between the State of New York and Yonkers Contracting Company, Inc., for highway construction; and the other between the State and the engineering firm of Briggs, Blitman and Posner, for supervision of the work under the first contract. The officers and employees of these two contractors with the State were accordingly prime targets in the investigation. The Attorney-General argues that in his estimation such officers and employees were not prospective defendants at the stage of the inquiry when they testified. But the subjective state of mind of the prosecutor is not the test which determines the fact of immunity; it is whether the scope of the inquiry, fairly considered in the light of all the circumstances, might involve the witness by reason of his testimony. The defendants Bankard, Blakeman, Guidotti, Nevins and Pottle were all employees of either one of the named contractors. When they testified under subpœna before the Grand Jury, they were protected by the immunity which the Constitution and the statutes afford (*People* v. *Laino*, 10 N Y 2d 161; *People* v. *Steuding*, 6 N Y 2d 214; *People* v. *De Feo*, 284 App. Div. 622, revd. on other grounds 308 N. Y. 595). The defendant Blackhall was an employee of the State. It is clear in the record that prior to testifying under subpœna before the Grand Jury he, too, had become a target of the investigation, since the checks said to represent the fees which he unlawfully accepted were already in the possession of the Attorney-General and he had been interrogated concerning them prior to and apart from the Grand Jury proceedings. He was therefore within the ambit of the constitutional and statutory immunity when he testified. On the same basis, though the facts are slightly different, we think that the defendant Cohill, subsequently indicted for grand larceny in the first degree, is entitled to·the same immunity. He was an employee of Yonkers Contracting Company, Inc. He appeared under subpœna and testified before the Grand Jury without waiving immunity. Thereafter, upon his request, and after signing a waiver of immunity, he appeared a second time before the Grand Jury and testified. But we construe the waiver of immunity given as prospective in operation only; there is no indication in the body of the waiver that it was to relate back to his first appearance, under compulsion, and the language of the waiver rather indicates that it was to apply to testimony to be given *in futuro*. Since we cannot say that the Grand Jury did not return the indictment against him on his testimony given under compulsion on his first appearance, we perforce must dismiss the indictment. We note that some of the defendants were admonished at the beginning of their testimony before the Grand Jury that their testimony might be used against them, and that others were not so admonished. None saw fit to claim his privilege. But we believe that these incidental facts neither enhance nor impair their immunity. Under the cited authorities, as we interpret them, once the defendants are in the zone of the target and are compelled to testify before the Grand Jury, their immunity comes automatically into being; it is self-executing. The defendants Petrillo and Cipolla, charged with giving or offering bribes, both signed waivers of immunity. Ordinarily, no claim of immunity could be asserted by them. We think, however, that in the instances of the crime of bribery it is otherwise. By the provisions of the State Constitution (art. XIII, § 3), then

in effect, a different immunity clothes a person offering a bribe to a public officer, in distinction to the usual immunity granted to a person who testifies under compulsion against himself (N. Y. Const., art. I, § 6). Thus, the State Constitution (art. XIII, § 3) provided that: "No person offering a bribe shall, upon any prosecution of the officer for receiving such bribe, be privileged from testifying in relation thereto, and he shall not be liable to civil or criminal prosecution therefor, if he shall testify to the giving or offering of such bribe. " A public policy to root out public corruption by the conferring of immunity on persons dealing with public officers, even though the one who gives or offers a bribe is thus insulated from prosecution, is apparent from this explicit language (cf. *Matter of Doyle*, 257 N. Y. 244). The greater evil was deemed to overbalance the lesser evil in the consideration of the public weal. We observe that the Constitution itself does not provide for the execution of a written waiver of immunity. The statute which does so (Penal Law, § 2446) does not mention the special immunity afforded to persons testifying with respect to bribes given to public officers; the statute refers only to prosecutions which may not be undertaken by virtue of the provisions of the Penal Law or any other general or special law, thus by implication at least excluding the special immunity. Moreover, our construction of our Constitution avoids any questions of Federal constitutional invalidity (*Regan* v. *New York*, 349 U. S. 58, 66, 66–69). From the fair import of the public policy manifested by the Constitution, we are impelled to the conclusion that in the case of bribery of a public officer an everlasting immunity was granted — an immunity which could be neither revoked nor waived; and that once a person (such as the defendants Petrillo and Cipolla here) testified in compliance with the constitutional mandate, his special constitutional immunity precluded his further prosecution both civilly and criminally. We observe that upon this appeal the wisdom of the constitutional provision becomes plain, for the public officer would escape from any liability for his alleged acts by reason of his compelled testimony, and yet, without the benefit of the special constitutional immunity, the persons testifying to the acts would be punished criminally. For these reasons we modify the resettled order to the extent indicated. Christ, Brennan and Hopkins, JJ., concur; Ughetta, Acting P. J., and Hill, J., concur insofar as the grand larceny indictments against the defendants Yonkers, Snook, Cipolla and Posner are upheld, but dissent from the dismissal of the other indictments, with the following memorandum: We agree with the majority that the Attorney-General was empowered by statute to appear before the Grand Jury and obtain the indictments under review. Unlike *People* v. *De Feo* (284 App. Div. 622, revd. on other grounds 308 N. Y. 595), this is a situation where it was not clear who were the alleged wrongdoers and who were the persons who merely knew the facts. With the possible exception of Yonkers and Posner, none of those indicted was a prospective defendant or a target of the "John Doe" investigation conducted by the Grand Jury, and hence *People* v. *Steuding* (6 N Y 2d 214) does not apply. In our opinion, the waivers of immunity executed by the defendants Cipolla, Cohill and Petrillo were valid and effective. A waiver is the voluntary and intentional relinquishment of a known right, and we see no reason why an immunity conferred by the Constitution may not be waived as readily as an immunity conferred by statute (cf. 56 Am. Jur., Waiver, § 9, pp. 110-111). The fact that an immunity is conferred by the Constitution does not, in and of itself, preclude its waiver. Thus, the Constitution itself provides for waiver of immunity by a public officer (N. Y. Const., art. I, § 6); the Constitution in effect permits a defendant in a noncapital criminal case to waive his constitutional right to trial by jury (N. Y. Const., art. I, § 2); and, in the case of unlawful search and seizure, a defendant who has failed to move,

in the manner prescribed by statute, for the return or suppression of the illegally obtained evidence, "shall be deemed to have waived any objection during trial to the admission of evidence on the ground that such evidence was unlawfully obtained" (Code Crim. Pro., § 813-d, subd. 4). Clearly, immunity may be waived regardless of whether it is conferred by statute or by the Constitution. In our opinion Exhibits 13A and 14A (as supported by the testimony of the witnesses Snyder and Tschebotarioff), Exhibits 26–28, Exhibit 5 (the diagram submitted in connection with the daily report of work for May 4, 1956), and Exhibit 29 (as viewed in the light of Highway Law, § 38, subd. 8, par. [b]), constitute prima facie evidence of a taking of more than $500.