Harold Birns, J.
This is an application pursuant to CPLR 2304 to quash certain subpoenas duces tecum issued by the respondent Special Prosecutor for Nursing Homes (hereafter Special Prosecutor). The subpoenas are returnable before the New York County Grand Jury investigating nursing homes and were served on several banking institutions in order to obtain the bank records of both the corporate and the individual petitioners.
Petitioners’ objections to the subpoenas fall into three basic categories: (1) the Grand Jury was improperly impaneled and extended, (2) the Special Prosecutor is not properly authorized to appear before the Grand Jury or to issue subpoenas on its behalf, and (3) the subpoenas are overbroad and constitute harassment of the petitioners.
Respondents maintain that the petitioners lack standing to raise any of the said objections.
It is well-settled law that a witness who is not a target has no standing to challenge the authority of a Grand Jury provided the Grand Jury has, at least, de facto organization and existence (Blair v United States, 250 US 273; People v “Doe” [Byk], 247 App Div 324, affd 272 NY 473; Matter of Moore v Delaney, 180 Misc 844; Matter of Barbuto v Silver, 19 Misc 2d 149). Petitioners do not deny that the Grand Jury in question was drawn and sworn in accordance with CPL 190.20. That being so, the petitioners lack standing to challenge the court’s authority to direct that such a Grand Jury be impaneled.
Despite petitioners’ lack of standing, a discussion of the objections to the Grand Jury is in order in view of the magnitude and importance of this investigation.
On December 19, 1974, an application was made to Presiding Justice Owen McGivern of the First Department for an order directing the impaneling of an additional Grand Jury for the January, 1975 term of the Supreme Court, New York County. The application was made pursuant to the Rules of the Appellate Division regarding the jury system in the City *433 of New York (specifically, 22 NYCRR 620.26). That section, insofar as it is applicable here, reads as follows:
"620.26 Number and terms for which grand juries shall be drawn and impaneled * * *
"(b) The Supreme Courts in the first judicial district, first department, may impanel six grand juries in the County of New York * * *
"(d) Additional grand juries may be drawn and impaneled in a particular county upon the order of the Appellate Division of the judicial department embracing that county.”
The application was made by Acting District Attorney Morgan of New York County and was accompanied by the supporting affidavits of Assistant Attorney-General Clurman and Assistant District Attorney Murphy. An "order” of Acting Supreme Court Justice George Roberts directing the impaneling of an additional Grand Jury was also annexed to the application.
The application and affidavits stated that the Attorney-General had been conducting an investigation of the nursing home industry and that the investigation had reached a point where evidence would be presented to a Grand Jury. The affidavits also stated that the seven Grand Juries already authorized for the January term would be fully occupied with other legal matters and would therefore be unable to hear anticipated lengthy testimony regarding nursing homes. Assistant Attorney-General Clurman’s affidavit averred that the testimony to be presented would deal with "a number of crimes including but not limited to violations of Article 23-A of the General Business Law and the Penal Law.”
On the same day, the Presiding Justice granted the application and ordered that an additional Grand Jury be impaneled before Justice Roberts.
Petitioners attack the validity of Presiding Justice Mc-Givern’s order on three grounds: (a) that Justice Robert’s order preceded that of Justice McGivern and was therefore improper and unauthorized; (b) that at the time of the application, the Attorney-General was not authorized to appear before the Grand Jury and therefore could not request an additional Grand Jury; and (c) that the Attorney-General had no violations of article 23-A of the General Business Law to present and therefore the application was duplicitous.
Presiding Justice McGivern’s order enjoys a presumption of *434 regularity. (Richardson, Evidence [10th ed], §§72, 77; 4 Bender’s New York Evidence, §§ 240.02, 240.03.)
The petitioners do not challenge the Presiding Justice’s authority to issue such an order under CPL 190.10 and the rules of the Appellate Division. The objections raised are collateral and insufficient to overcome the presumption of regularity. Indeed, upon examination the objections are irrelevant.
Presiding Justice McGivern’s order was complete in itself and required no further implementation. Therefore, the validity of Justice Roberts’ order need not be considered. Similarly, the contentions regarding the Attorney-General’s lack of authority to appear before the Grand Jury and the alleged absence of violations of article 23-A of the General Business Law have no bearing on the main thrust of the application submitted to the Presiding Justice. The application, simply stated, was that the volume of matters to be considered by the January, 1975 Grand Juries required an additional Grand Jury. The authority of the Attorney-General and the scope of his inquiry do not affect the validity of that premise or the order predicated upon it.
The petitioners also argue that Justice Roberts’ orders extending the Grand Jury are invalid. This contention is clearly refuted by the record. The Grand Jury minutes, the minutes of the proceedings in Part 30, and the orders of Justice Roberts, all show complete compliance with CPL 190.15.
In short, there is no defect in the formation of this Grand Jury which would render it invalid or nullify its process (Matter of Seidenberg v County Ct. of County of Rockland, 34 NY2d 499).
While the Grand Jury is an arm of the court which has an existence totally apart from that of the Special Prosecutor, the authority of the Special Prosecutor to appear before the Grand Jury and to issue process on its behalf is an altogether different question, which the court will now discuss.
The Attorney-General has latent power to appear before a term of the Supreme Court or its Grand Jury. However, that power must be triggered by statutory authority. In the instant case, the Special Prosecutor derives his authority to appear before Grand Juries to present matters relating to nursing homes from subdivision 3 of section 63 of the Executive Law. That subdivision, insofar as it is germane here, reads as *435 follows: "The attorney-general shall * * * 3. Upon request of * * * the head of any other department * * * of the state, investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, and to prosecute * * * including but not limited to appearing before and presenting all such matters to a grand jury.”
On December 19, 1974, the Attorney-General received two letters from the State Commissioners of Health and Social Services requesting him to prosecute indictable offenses involving the nursing home industry. The letters were apparently solicited by the Attorney-General.
In connection with the above-mentioned requests, respondent Hynes was appointed a Deputy Attorney-General on January 10, 1975.
The petitioners, relying on People v Tru-Sport Pub. Co. (160 Misc 628), assert that the letters of the two commissioners lack specificity to activate the powers inherent in subdivision 3 of section 63 of the Executive Law.
The Tru-Sport case (supra) is clearly distinguishable from the case at bar. In Tru-Sport the Attorney-General received a request from the Secretary of State to prosecute persons who falsely advertised that they could predict the outcome of horse races. The court found that the Department of State’s powers and duties in relation to the holding of race meetings were too remote from the subject matter of the investigation to uphold a valid exercise of subdivision 3 of section 63 of the Executive Law.
In the case at bar, the Commissioners of Health and Social Services are directly involved in the supervision and control of the nursing home industry (see, e.g., Public Health Law, §§ 2801-a, 2854).
Moreover, requests by State agencies to the Attorney-General less specific than those in the instant case have • been upheld (see People v Zara, 44 Misc 2d 698; People v Tomasello, 21 NY2d 143; People v Yonkers Contr. Co., 24 AD2d 641, mod on other grounds, 17 NY2d 322).
Petitioners suggest that it was irregular for the Attorney-General to solicit the requests from the two commissioners.
The court knows of nothing in law to bar State officers from communicating with one another on matters of mutual re *436 sponsibility. The commissioners were not obligated to comply with such requests. They could accede or not. The choice was theirs. The sequence of the correspondence is of no importance; the fact that requests actually were made controls.
It is noted that by executive order dated February 7, 1975 (9 NYCRR 3.4), the Governor directed the Attorney-General to conduct an investigation of the nursing home industry pursuant to subdivision 8 of section 63 of the Executive Law. On February 13, the Attorney-General designated the Special Prosecutor (the respondent here) to exercise the said powers granted by the Governor.
The petitioners’ argument that this executive order of the Governor superseded the requests of the two commissioners is' equally casuistic.
It is obvious that the Governor’s order was intended to expand, not reduce, respondent’s powers. The Special Prosecutor, therefore, under all the circumstances outlined here, was properly authorized to appear before the Grand Jury and to issue subpoenas in its behalf.
The last of the petitioners’ objections is that the subpoenas issued under the aegis of the Grand Jury by the Special Prosecutor are overly broad. The corporate petitioners are in the business of selling institutional supplies (L & S Hospital and Institutional Supplies Co., Inc.) and leasing furniture (Ellanes Furniture and Hospital Supply Co., Inc.). The individual petitioners are officers of those corporations. The subpoenas in question seek all the banking records of the petitioners, not merely those which deal with nursing home transactions. It is uncontested that the corporate petitioners in the course of their business deal with many customers unrelated to the nursing home industry. The subpoenas, therefore, are far too sweeping, and the petitioners, as the true parties in interest, have standing to contest the subpoenas on that ground (see Matter of Moskowitz v Hynes, NYLJ, July 23, 1975, p 10, col 5).
As the Supreme Court observed in United States v Dionisio (410 US 1, 11, citing Hale v Henkel, 201 US 43): "The Fourth Amendment provides protection against a grand jury subpoena duces tecum too sweeping in its terms 'to be regarded as reasonable.’ ” The Special Prosecutor is a law enforcement officer of limited authority. In the absence of some showing of relevance to the nursing home investigation, the door is not *437 open for a full-scale investigation of the personal affairs of anyone who has ever dealt with a nursing home in this State.
The application, therefore, is granted to the extent that the subpoenas are modified to require production only of those records which reflect transactions with nursing homes or related business or individuals. The attorney for the petitioners is directed to arrange with the Special Prosecutor and the subpoenaed banking institutions for an orderly method of producing the required records.