Harold Birns, J.
The instant application, pursuant to CPLR 2304, seeks an order quashing a subpoena duces tecum issued by the Special Prosecutor for Nursing Homes and served upon the Chase Manhattan Bank, or, alternatively, requests an order modifying the subpoena by limiting its scope.
The subpoena is returnable before a New York County Grand Jury and requires production of "all records relating to the account in the name of U.S. Construction and Remodeling Company, including, but not limited to signature cards, corporate resolutions if any, monthly statements, deposit slips, reproduced checks, loan applications, debit and credit memos.”
Petitioner claims that the instant Grand Jury subpoena violates his constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States.
Petitioner’s application presents both complex and novel issues for adjudication. At the outset, respondent contends that petitioner lacks standing to mount a Fourth Amendment challenge to the production of the records of his bank account kept by Chase, pursuant to the Bank Secrecy Act of 1970 (PL 91-508; 84 US Stat 11Í4; US Code, tit 12, § 1829b) and the *940 regulations promulgated thereunder (31 CFR 103.34 [b]). Moreover, the Special Prosecutor asserts that petitioner has neither possessory nor ownership interest in the records subpoenaed; and since the documents, are in the hands of a third party, petitioner likewise has no "reasonable expectation of privacy” upon which to ground his constitutional objections to production.
Petitioner alleges that he is a target of the investigation, which respondent does not deny, and as such is vitally affected by the process herein. He contends he is the real party in interest and that his rights, and not the bank’s, are in jeopardy. He argues that a bank account is a necessary incident of modern life, that such records of one’s bank account reveal much about an individual’s personal life, and the bank-depositor relationship is a confidential one. Petitioner asserts that a showing of probable cause before a neutral Magistrate should be a condition precedent to a demand for the records sought herein, and that therefore a search warrant, and not a subpoena, is the appropriate vehicle to be used for this purpose.
Thus, the threshold issue is whether a depositor has a reasonable expectation of privacy in the information he discloses to his bank as a result of transacting business in his account. If such expectation of privacy exists, the next question is the degree of protection to be afforded the depositor to adequately safeguard his constitutional rights.
Prior to the adoption of the Bank Secrecy Act of 1970, which required banks to compile files on customer accounts, the courts uniformly held that bank records were subject to production in response to valid legal process (Harris v United States, 413 F2d 316; Galbraith v United States, 387 F2d 617; O’Donnell v Sullivan, 364 F2d 43, cert den 385 US 969; Matter of Cole, 342 F2d 5, cert den 381 US 950; De Masters v Arend, 313 F2d 79, cert dsmd 375 US 936; Foster v United States, 265 F2d 183, cert den 360 US 912). Records such as those demanded in the instant subpoena (e.g., bank statements, signature cards, deposit slips, loan applications and canceled checks) were deemed to be property of the bank, and the cases denied recognition of any depositors’ rights to prevent the production of documents, whether sought under an ownership or agency theory (Harris v United States, supra).
Moreover, no case prior to enactment of the Bank Secrecy Act conferred standing on the basis of a cognizable privacy *941 interest sufficient to meet the standards enunciated in Katz v United States (389 US 347).
Traditionally the courts have viewed the bank-depositor relationship as one of debtor-creditor (Bank of Marin v England, 385 US 99, 101), noting that canceled checks "were negotiable instruments in commerce and were never confidential from the time of their creation.” (United States v Judson, 322 F2d 460, 463.) The rationale appears to be clearly that the maker issuing a check "set[s] the check afloat on a sea of strangers” (Harris v United States, 413 F2d 316, 319, supra). Thus, the maker knows that it will be viewed by various employees at the bank where cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return.
In California Bankers Assn. v Shultz (416 US 21), the Supreme Court, in a 6-3 decision, ruled that the Bank Secrecy Act of 1970 and the regulations adopted thereunder were constitutional. The court found that the record-keeping provisions of the act, which dictate that banking institutions maintain records of the type sought by the subpoena herein, were a reasonable exercise of legislative authority and did not impinge on any constitutional rights guaranteed in the Fourth, Fifth and Fourteenth Amendments. The court declined to consider, as premature, the effect of the statute on the rights of depositors to challenge process issued against a third party.
Subsequent criminal cases have permitted depositors to defeat, in certain circumstances, government attempts to obtain bank records based on a Fourth Amendment protection against unlawful invasion of privacy (United States v Miller, 500 F2d 751, cert granted 421 US 1010; Burrows v Superior Ct. of San Bernardino County, 13 Cal 3d 238).
In United States v Miller (supra), bank records had been obtained for use in criminal prosecution by means of a faulty Grand Jury subpoena. Upon review of the facts, and in light of the decision in California Bankers (supra), the Circuit Court suppressed the evidence produced under a subpoena improperly issued, and concluded that the Supreme Court in upholding the constitutionality of the Bank Secrecy Act "did not place the judicial stamp of approval upon every prosecutorial tactic for obtaining records compiled under the requirements of the Act” (United States v Miller, supra, p 757).
In Boyd v United States (116 US 616, 622), the Supreme Court held that "compulsory production of a man’s private *942 papers to establish a criminal charge against him * * * is within the scope of the Fourth Amendment”. The Circuit Court, in Miller (supra, p 757), observed: "The venerable Boyd doctrine still retains its vitality; the government may not cavalierly circumvent Boyds precious protection by first requiring a third party bank to copy all of its depositors’ personal checks and then, with an improper invocation of legal process, calling upon the bank to allow inspection and reproduction of those copies. In upholding the Bank Secrecy Act the divided California Bankers Court determined that the government could take the first of those steps without exceeding constitutional limits. The Court, however, did not choose to abandon 90 years of precedent by proclaiming open season on personal bank records.”
The court further, in Miller (supra, pp 757-758), made access to records contingent upon valid legal process and thereby implicitly recognized a depositor’s right of privacy in the transactions recorded in his bank account by granting ' standing to challenge the . validity of process. The court grounded its conclusion on the language in the majority opinion in California Bankers (416 US 21, 52, supra), which stated that "both the legislative history and the regulations make specific reference to the fact that access to the records is to be controlled by existing legal process.” (Cf. 31 CFR 103.51 [1973]; HR Rep No. 91-975, 91st Cong 2d Sess [1970], S Rep No. 91-1139; 91st Cong 2d Sess [1970].)
The California Supreme Court, that State’s highest court, recently adopted the Miller approach and explicitly held that "A bank customer’s reasonable expectation is that, absent compulsion by legal process, the matters he reveals to the bank will be utilized by the bank only for internal banking purposes” (see Burrows v Superior Ct. of San Bernardino County, 13 Cal 3d 238, 243, supra).
The California court reasoned that "For all practical purposes, the disclosure by individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account. In the course of such dealings, a depositor reveals many aspects of his personal affairs, opinions, habits and associations. Indeed, the totality of bank records provides a virtual current biography” (id. , at p 247; cf. California Bankers Assn. v Shultz, supra, Douglas, J., dissenting, at p 85). However, the Burrows court, like the *943 Miller court before it, sanctioned access to the records only if obtained by valid legal process.
Accordingly, this court finds that petitioner, as the party in interest entitled to a limited expectation of privacy in the records, has standing to contest the validity of the instant subpoena, and the courts should provide a forum for depositors to challenge third-party process on constitutional grounds. Banks cannot be expected to resist a subpoena by placing themselves in contempt, and compliance by the third-party bank clearly would frustrate any judicial determination of the issue. (See Eastland v United States Servicemen’s Fund, 421 US 491, 501, n 14, and concurring opn of Marshall, J., at p 514, and cases cited therein.)
Judicial scrutiny to determine the traditional requirements for valid legal process is necessary (United States v Miller, 500 F2d 751, supra; Burrows v Superior Ct. of San Bernardino County, 13 Cal 3d 238, supra). New York provides adequate procedures to contest the validity, relevancy and reasonableness of subpoenas in the provisions of CPLR 2304.
Under California Bankers and its progeny, a showing of probable cause, while helpful, is not essential- as long as valid legal process has been issued (e.g., a proper Grand Jury subpoena). Depositors’ constitutional rights under the Fourth Amendment may be vindicated by the procedures provided in CPLR 2304. (See Matter ofL & S Hosp. & Inst. Supplies Co. v Hynes, 84 Misc 2d 431; Matter of Moskowitz v Hynes, NYLJ, July 23, 1975, p 10, col 5.)
With respect to the petitioner’s contention that the subpoena was. invalidly issued, this court recently considered the identical argument in another proceeding (see Matter of L & S Hosp. & Inst. Supplies Co. v Hynes, supra), and the decision in that matter is dispositive of this ground. In L & S, petitioner’s motion to quash certain Grand Jury subpoenas duces tecum issued by the office of the Special Prosecutor for Nursing Homes was denied, and the Special Prosecutor was found to be authorized under subdivision 3 of section 63 of the Executive Law to issue process on behalf of the New York County Grand Jury presently investigating. Medicaid fraud and abuses.
As valid legal process, this Grand Jury subpoena is precisely the means contemplated by the Supreme Court, by which the government may properly obtain access to bank records of petitioner’s account (California Bankers Assn. v Shultz, 416 *944 US 21, supra; United States v Miller, 500 F2d 751, supra; Burrows v Superior Ct. of San Bernardino County, 13 Cal 3d 238, supra).
The fact that an improper Executive Law (§ 63, subd 8) subpoena was previously issued has no bearing on the validity of the instant Grand Jury process in this application to quash.
Petitioner argues, in addition, that the subpoena is unconstitutionally broad and for that reason constitutes a general search in violation of his Fourth Amendment rights. The subpoena seeks the records of his business account, which he operates as a sole proprietorship, and which reflect many nonnursing home transactions. The subpoenas are far too sweeping in their scope (see Matter of L & S Hosp. & Inst. Supplies Co., supra).
The Special Prosecutor is a law enforcement officer of limited authority. In the absence of a showing of relevance to the inquiry at hand, he is unauthorized to open a full-scale investigation of the personal affairs of anyone who has ever dealt with a nursing home in this State.
Accordingly, petitioner’s motion is granted to the extent of modifying the subpoena so as to limit its application only to the production of those records which reflect transactions with nursing homes, related businesses or individuals.
Petitioner’s other constitutional arguments are without merit. He contends that his personal and business records in the hands of his bank are protected under the Fifth Amendment. The Supreme Court in Couch v United States (409 US 322, 328), in examining the Fifth Amendment privilege, held: "the Fifth Amendment privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him. As Mr. Justice Holmes put it: 'A party is privileged from producing the evidence but not from its production.’ Johnson v. United States, 228 U. S. 457, 458 (1913). The Constitution explicitly prohibits compelling an accused to bear witness 'against himself; it necessarily does not proscribe incriminating statements elicited from another. Compulsion upon the person asserting it is an important element of the privilege, and 'prohibition of compelling a man ... to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him,’ Holt v. United States, 218 U. S. 245, 252-253 (1910) (emphasis added). It is extortion of information from the accused himself that offends our sense of justice.”
*945 Thus, to successfully raise the Fifth Amendment as a bar to production of records, there must exist some semblance of compulsion against the person of petitioner. In this instance, none exists. The bank is the party compelled by subpoena, and there is present here no special circumstances between petitioner and his bank which would be protected by the Fifth Amendment. (See United States v Miller, 500 F2d 751, supra; Burrows v Superior Ct. of San Bernardino County, 13 Cal 3d 238, supra.)
Petitioner argues that, under CPL 190.40 (subd 2), if the instant subpoena is not quashed, he is entitled as a target to receive transactional immunity with respect to the evidence revealed by the records produced under the subpoena.
CPL 190.40 (subd 2) provides in relevant part that: "A witness who gives evidence in a grand jury proceeding receives immunity” (emphasis added).
Thus, a witness before the Grand Jury receives immunity in exchange for compelled testimony (see CPL 50.10). The bank is the party compelled by Grand Jury process to produce the records. The petitioner, while a target, is not a witness, nor is he giving any evidence for which immunity may be conferred. Moreover, under these circumstances this court is without authority to grant such a request (see CPL 50.20).
Petitioner further alleges that compliance with the Grand Jury subpoena would have a chilling effect upon his First Amendment right to freedom of association.
The Supreme Court in Branzburg v Hayes (408 US 665, 688), declared: "the longstanding principle that 'the public . . . has a right to every man’s evidence,’ except for those persons protected by a constitutional, common-law, or statutory privilege, [citations omitted], is particularly applicable to grand jury proceedings.”
While records of petitioner’s bank account may reflect his religious, political, and personal associations, this court has restricted the subpoena to those items which involve transactions with nursing homes and related businesses and individuals presently the subject of pending criminal investigation by the New York County Grand Jury. Only those records directly relevant to the inquiry will be available to the Grand Jury; therefore, invasion of areas protected by the First Amendment is unlikely. However, there is compelling State interest in Grand Jury testimony, particularly with respect to this crimi *946 nal investigation of the nursing home industry, because this industry is so intimately involved with the public health and safety and derives substantial funding from government sources by way of Medicare and Medicaid payments. Accordingly, the paramount government interest in obtaining all relevant testimony before the Grand Jury would appear under Branzburg (supra), to outweigh, on balance, defendant’s asserted reliance on First Amendment rights.
Petitioner’s motion to quash is denied. The alternative relief requested in the application is granted to the extent of modifying the subpoenas as herein indicated.
Settle order on notice, including proposed modified subpoena and plan for the orderly production of the documents.