OPINION OF THE COURT
Jasen, J.
On this appeal, appellants challenge the authority of respondent Deputy Attorney-General Hynes to investigate possible Medicaid fraud and criminal conduct within hospitals and to issue Grand Jury subpoenas duces tecum in furtherance of his office’s duty to prosecute such activity. To resolve the issue whether respondent possesses the requisite authority for this investigation, our inquiry focuses necessarily upon the language of subdivision 3 of section 63 of the Executive Law — the statute which respondent claims provides a sufficient basis to authorize his investigation of hospitals.
By separate letters dated September 30, 1977, the Commissioners of Health and Social Services requested the Attorney-General’s office to investigate the alleged commission of any indictable offense or offenses in violation of either the Public Health Law or Social Services Law by hospitals which are subject to the provisions,of such laws.[1] This request to probe into the activities of hospitals was joined by the Superintend *133 ent of Insurance who, by letter dated September 20, 1978, petitioned the Attorney-General to "investigate the alleged commission of any indictable offense or offenses in violation of the Insurance Law.”[2] In addition, on April 27, 1978, the Commissioners of Health and Social Services requested the Attorney-General to investigate all criminal offenses connected with the provision of medical assistance to needy persons under the Medicaid program, thereby supplementing many of the prior requests.[3] Pursuant to each one of these requests, respondent Hynes was designated by the Attorney-General to act as his deputy and was empowered "to perform all the functions and to exercise all the powers conferred upon the Attorney General.”
Grand Jury proceedings were commenced in May of 1978, due to serious allegations of wrongdoing which were made against appellant Dr. Neuman. In October of that year, respondent Hynes issued a Grand Jury subpoena duces tecum to appellant Mann Judd Landau, a firm of certified public accountants which was the independent auditor for Continued Care Facilities, Inc., a publicly held Delaware corporation of which appellant Dr. Neuman is a principal beneficial shareholder and officer. This subpoena sought "all workpapers prepared in connection with Continued Care Facilities, Inc. and subsidiaries, to include permanent and correspondence files for the period January 1, 1973, through December 31, 1977.”
In December of 1978, the Special Prosecutor served two *134 Grand Jury subpoenas duces tecum on Dr. Neuman, doing business as Lydia E. Hall Hospital, and on Dr. Neuman, doing business as Syosset Hospital, demanding, in essence, all the business records of these hospitals for the five-year period from January 1, 1973 to December 31, 1977. In addition, a subpoena duces tecum was served on appellant Jay S. Zimmet, a certified public accountant, in February of 1979. Zimmet audited both Lydia Hall Hospital and Syosset Hospital and other proprietorships or corporations owned by Dr. Neuman. The subpoena called for the production of all workpapers, correspondence files and reports prepared in connection with these businesses for the period from January 1, 1972 through December 31, 1978.
The recipients of these Grand Jury subpoenas duces tecum and those businesses affected thereby, all appellants herein, moved to quash the respective subpoenas. County Court, after consolidating the three proceedings for disposition, denied the requested relief. A unanimous Appellate Division affirmed the order of County Court. Leave to appeal from the order of the Appellate Division was granted by this court. There should be an affirmance.
The main thrust of appellants’ contentions is that Deputy Attorney-General Hynes lacked the authority to investigate instances of fraud and criminal conduct within the hospital industry. Specifically, appellants argue that absent a legislative directive, the letters sent by the various commissioners to the Attorney-General, pursuant to subdivision 3 of section 63 of the Executive Law, were insufficient to authorize such investigation. Further, appellants contend that such requests are defective because they failed to specify the indictable offenses sought to be investigated.
The first prong of appellants’ argument — that the requests are insufficient to authorize an investigation of the hospital industry — derives its vitality from our recent decision in Matter of Friedman v Hi-Li Manor Home for Adults (42 NY2d 408). In Friedman, although we held unequivocally "that the Deputy Attorney-General had authority by the issuance of an office subpoena duces tecum under subdivision 8 of section 63 of the Executive Law to compel the production of books and records of private proprietary homes for adults” (id., at pp 411-412), the majority, in dictum, suggested that the preferable approach for "State-wide investigations of this sort would be the enactment of specific, ad hoc legislative authority for *135 particular inquiries” (id., at p 414). The majority further noted that our holding in Friedman "should not be understood as viewing subdivision 8 of section 63 as any reservoir of latent authority for investigations, however desirable they may be thought to be, into other areas of legitimate governmental concern or responsibility.” (Id., at p 415.)
Appellants, seizing upon this language, now argue that respondent Hynes should not be allowed to expand his ongoing investigations of the nursing home industry and private proprietary homes for adults to include hospitals, absent an express legislative directive to do so. In short, appellants argue that the Attorney-General should not now be allowed to claim such authority under subdivision 3 of section 63 of the Executive Law inasmuch as we intimated in dictum in the Friedman case (supra) that he could not obtain such authority from subdivision 8. We do not agree.
Subdivision 3 of section 63 of the Executive Law provides that the Attorney-General shall "[u]pon request of the governor * * * or the head of any other department, authority, division or agency of the state, investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, and to prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation or prosecution or both, including but not limited to appearing before and presenting all such matters to a grand jury.” It has been stated that this provision should not be construed strictly, but, rather, should be read in "a sense to accomplish the purpose intended.” (People v Yonkers Contr. Co., 24 AD2d 641, mod on other grounds 17 NY2d 322.)
While there is little case law delineating the powers conferred upon the Attorney-General by employment of subdivision 3 of section 63 of the Executive Law, it appears that the courts of this State have uniformly construed this section as bestowing upon the Attorney-General the broadest of powers. Although the apparent first attempt to use this authority was rejected in People v Tru-Sport Pub. Co. (160 Misc 628), that court predicated its decision upon the ground that the Department of State’s jurisdiction and duties were too far attenuated from the subject matter sought to be investigated — the advertising by persons who falsely claimed that they could predict *136 the outcome of horse races — to support the Secretary of State’s request.
Here, in marked contrast, appellants do not claim, nor could they, that the crimes sought to be investigated do not concern matters within the jurisdiction of the heads of the departments who requested the investigations. Indeed, the letters of request themselves limit the inquiries to those matters connected with the respective departments.
In People v Zara (44 Misc 2d 698), the court held that the Attorney-General, by his assistants, acted properly in impaneling a Grand Jury and conducting proceedings before it when requested by the State Superintendent of Public Works to prosecute any persons who may have violated the law by removing topsoil belonging to the State. The court, in so holding, reasoned as follows: "Although they may have become latent since the office of District Attorney was created * * * the common-law powers of the Attorney-General have never been abrogated by any constitutional provision or legislative enactment. When activated by the request of a proper State officer to prosecute pursuant to subdivision 3 of section 63 of the Executive Law, these latent powers are revived.” (Id,, at p 701.) While this is not to say that the Attorney-General’s historic authority to prosecute all crimes occurring anywhere in the State is resurrected in toto, it does mean that the Attorney-General’s latent authority is revived with respect to those classes of crimes properly requested to be investigated. (See People v Tomasello, 21 NY2d 143, 151.)
Perhaps the most compelling authority to support respondent Hynes’ position that his office possesses the authority to investigate possible Medicaid fraud and criminal conduct within the hospital industry can be found in our opinion in Matter of Sigety v Hynes (38 NY2d 260). In the Sigety case, we held that letters — almost indistinguishable from those here at issue — sent by the Commissioners of the Departments of Health and Social Services to the Attorney-General authorized the latter to initiate an investigation into the nursing home industry. (See, also, Matter of Agnello v Armer, 56 AD2d 712, 713; Matter of L & S Hosp. & Institutional Supplies v Lefkowitz, 54 AD2d 734; Matter of L & S Hosp. & Institutional Supplies Co. v Hynes, 51 AD2d 515, affg 84 Misc 2d 431.)
Further, it should be noted that this is not the first time the Attorney-General’s authority to investigate the hospital industry pursuant to subdivision 3 of section 63 of the Executive *137 Law has been tested in the courts. In Matter of Goldstein v Hynes (64 AD2d 1032, mot for lv to app den 45 NY2d 712), petitioners sought to quash certain subpoenas ad testiñcandum issued to them, claiming, as do appellants herein, that the letters sent to the Attorney-General by the Commissioners of Health and Social Services do not confer upon the former power to initiate a broad investigation of the hospital industry. This argument was rejected by the courts in that case, and we find no compelling reason to deviate from that holding in the present case.
There also exists a fundamental distinction between án office subpoena duces tecum which was the subject of our inquiry in Matter of Friedman v Hi-Li Manor Home for Adults (42 NY2d 408, supra) and a Grand Jury subpoena duces tecum as issued in this case, inasmuch as the latter is subject to direct judicial supervision and there is less chance of abuse. (See Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231-232.) As perceptively noted by County Court, "the exercise of § 63(3) powers, as opposed to § 63(8) powers, involves a significant difference in the degree of protection afforded a witness or a target of an investigation.” This is an additional reason not to transform those concerns outlined in the Friedman case (supra) into the rationale to restrict the Attorney-General’s authority to investigate the hospital industry.
Thus, we conclude that the letters sent to the Attorney-General by the respective department heads empowered the Attorney-General, by his duly appointed deputy, to conduct an investigation into the hospital industry. Our holding today is in accord with the plain language of subdivision 3 of section 63 of the Executive Law itself, which provides the Attorney-General or his deputy with broad investigative and prosecutorial powers whenever an investigation is requested by a head of a department. Nowhere in the Friedman case (supra) did we suggest a contrary result.
Nor is our holding today altered by the fact that the department heads failed to designate specifically in their letters of request the indictable offenses and persons or businesses sought to be investigated. Suffice it to say that a fair reading of subdivision 3 of section 63 of the Executive Law reveals that it imposes no such requirement, and this court would be remiss in reading this statutory provision in a hypertechnical manner which would defeat its purpose. The *138 wording of the statute itself by providing the Attorney-General with authority "to prosecute the person or persons believed to have committed [offenses in violation of the law which the officer making the request is required to execute] and any crime or offense arising out of such investigation or prosecution or both” evinces the intent of the Legislature to permit both the investigation of unspecified crimes and the prosecution of unnamed persons. (Emphasis added.) Indeed, this statute has been accorded such construction previously by courts of this State. (See Matter of Goldstein v Hynes, 64 AD2d 1032, supra; Matter of L & S Hosp. & Institutional Supplies Co. v Hynes, 84 Misc 2d 431, 435, supra; People v Zara, 44 Misc 2d 698, 702, supra.)
As a practical matter, it would be virtually impossible for the department heads to set forth specifically the crimes sought to be investigated. Such information would become available only after the investigation has been undertaken, especially where, as here, the investigation encompasses a most complex field and requires painstaking efforts to disentangle the financial web of the hospital industry.
One remaining issue requires comment. Appellants also mount an attack upon the Grand Jury subpoenas duces tecum claiming that they are overbroad and unduly burdensome. Both courts below have decided this primarily factual issue to the contrary, however, and we cannot say, as a matter of law, that their conclusions were erroneous in view of the purpose of the inquiry. (See Matter of Friedman v Hi-Li Manor Home for Adults, 42 NY2d 408, 416-417, supra.)
We have examined appellants’ remaining contentions, and have found them to be wholly without merit.
Accordingly, for the reasons stated herein, the order of the Appellate Division should be affirmed.

. The full text of the letter sent by the Commissioner of Health reads as follows: "Pursuant to Section 63(3) of the Executive Law, I hereby request that your office investigate the alleged commission of any indictable offense or offenses in violation of the Public Health Law or in relation to any matters connected with the New York State Department of Health by hospitals subject to the provisions of Article 28 of the Public Health Law, their principals, agents, suppliers or other persons connected or involved therewith; and that you prosecute the person or persons believed to have committed the same or any crime or offense arising out of your investigation or prosecution or both.”
The letter authored by the Acting Commissioner of Social Services provided: "Pursuant to Section 63(3) of the Executive Law, I hereby request that your office investigate the alleged commission of any indictable offense or offenses in violation of the Social Services Law or in relation to any matters connected with the New York State Department of Social Services by hospitals subject to the provisions of the Social Services Law, their principals, agents, suppliers or other persons connected or involved therewith, and that you prosecute the person or persons believed to have committed the same or any crime or offense arising out of your investigation or prosecution or both.”

. This letter read as follows: "Pursuant to Section 63(3) of the Executive Law, I hereby request that your office investigate the alleged commission of any indictable offense or offenses in violation of the Insurance Law or in relation to any matters connected with the New York State Department of Insurance by hospitals which receive payment for services in accordance with rates approved by me under Article IX-C of the Insurance Law and Section 2807 of the Public Health Law, their principles [sic], agents, suppliers or other persons connected or involved therewith, and that you prosecute the person or persons believed to have committed the same or any crime or offense arising out of your investigation or prosecution or both.”

. It should be noted that the many forms of waste by the hospital industry in the expenditure of public funds did not escape the attention of the Governor. On June 5, 1978, the Governor issued Executive Order No. 72 (9 NYCRR 3.72) directing the Attorney-General, pursuant to subdivision 8 of section 63 of the Executive Law, to "inquire into matters concerning the public peace, public safety and public justice with respect to the operation, management and funding of hospitals, and any principal, operator, agent, supplier or other person connected therewith.” This civil investigation was initiated by the Governor so that he could take appropriate executive action to cure the cited problems.