*325 OPINION OF THE COURT
Duncan S. McNab, J.
Back on March 18, 1977, this court dismissed Indictment No. 76-00905-02, against defendant Loretta Neuman, on grounds of legally insufficient evidence, with leave to the office of the Special Prosecutor to apply for resubmission within 10 days of that decision. On that same day, this court also dismissed that same indictment, with leave to resubmit, as to defendant’s husband and codefendant, Dr. Carl Neuman, as well as Indictment No. 76-00906-01, based not on insufficient evidence, but rather, for improper comment and inadequate legal instruction at the Grand Jury. (See People v Neuman, NYLJ, March 24, 1977, p 13, col 2.) To this court’s knowledge, the Special Prosecutor never exercised either option left open to him under those decisions. Subsequently, some two years and nine months later, on December 6, 1979, defendant Loretta Neuman, pursuant to CPL 160.50, effective September 1, 1976, moved for the return of any and all fingerprints, palm-prints, photographs, and photographic plates or proofs, as well as to seal a variety of what she contends are “official records”.* By way of answering papers dated April 14, 1980, the Special Prosecutor consents to the return of any and all photographs, fingerprints, etc., but opposes the branch of defendant’s motion to seal, arguing (1) that the materials in question here, i.e., all records and papers relating to the arrest or prosecution of Mrs. Neuman, are not “official records” within the meaning of CPL 160.50, and (2) that in any event, these materials are relevant to a Nassau County Grand Jury presently investigating two hospitals controlled by Dr. Neuman there, and may need to be examined by that Grand Jury in furtherance of their investigation. In reply, defendant urges (1) that the Special Prosecutor’s opposition papers, dated April 14, 1980, are untimely, and (2) alternatively, that this court should hold a hearing to ascertain whether the Special Prosecutor has been acting in good faith and with a sufficient factual basis to justify denying the application to seal and permit inspection of the various documents by the Nassau County Grand Jury.
Having examined the moving papers and having heard the oral argument of both sides, this court would grant defen *326 dant’s motion insofar as the return of the photographs, fingerprints and the like are concerned, but is constrained to deny the branch of defendant’s motion involving the sealing. First, as a threshold matter, the court would note that CPL 160.50 does not require the prosecutor to move in opposition within any particular time period, but only that he give at least five days’ notice to the defendant that in his opinion the interests of justice do not call for sealing. The Special Prosecutor has in fact here provided the required notice. Thus, the court would not find the Special Prosecutor’s opposition papers to be untimely.
Secondly, the court would find that the various records in question here, which the court understands largely consist of investigative and audit reports prepared by the office of the Special Prosecutor during the investigation and previous prosecution of defendants Loretta Neuman and Dr. Carl Neuman, do not constitute "official records and papers” within the meaning of CPL 160.50 (subd 1, par [c]). Here, the court would be guided by the distinction drawn in Matter of Hynes v Karassik (63 AD2d 597, affd 47 NY2d 659) wherein, in reversing the ruling of the trial court which had granted respondent’s motion to unseal, the First Department nevertheless made available to the Bar Association Grievance Committee certain tape recordings which had been made in the course of an investigation, and which had later been received into evidence at trial. In so doing, the majority (Kupferman, J., concurring and dissenting in part) made the following comment (at p 598): "it seems appropriate to express our understanding that a tape recording made in the course of an investigation does not become an official record required to be sealed under the section simply because it is marked in evidence as an exhibit in the course of a criminal trial. On the other hand, it would seem clear that the indictment itself is such an official record.” (Emphasis added.)
In affirming the decision of the First Department, it is significant that the Court of Appeals did not choose to disturb the holding of the First Department that the two tape recordings in question did not fall within the definition of "official records and papers” contained in CPL 160.50 (subd 1, par [c]). Rather, they appeared to be more concerned with the rather unusual procedural posture of the case, involving the prosecutor’s motion to unseal records which had previously been ordered sealed, noting, "It is suggested that, by like logic, in *327 the even rarer and more extraordinary circumstances in which sealed records must be unsealed in order to serve fairness and justice, courts are not impotent to do so as well * * * But, indeed, while cases might arise in which the exercise of a power to unseal would be appropriate * * * the proceeding before us does not present such a situation.” (Matter of Hynes v Karassik, 47 NY2d, at pp 664-665; emphasis added.)
Thus, in view of the reasoning expressed in Karassik (supra) this court would find that the records in question are not "official records” within the meaning of CPL 160.50. This finding is not affected by the ruling made in Matter of Attorney-General of State of N. Y. (101 Misc 2d 36) wherein my learned colleague, Mr. Justice J asp an, denied the Attorney-General’s motion there for disclosure of certain Grand Jury minutes and exhibits pertaining to the Smithtown General Hospital. As in Karassik (supra) it should be noted that Justice Jasp an was also faced with the more extreme request to, in effect, unseal records already sealed. Additionally, and perhaps more importantly, Justice J asp an concluded that the Attorney-General had "failed to demonstrate any overriding need for the Grand Jury minutes requested” which would have triggered the court’s "inherent but limited power” to make the minutes available. (Matter of Attorney-General of State of N. Y., supra, p 40; emphasis added.) Thus, even if, arguendo, certain of the records herein should contain materials received in evidence at the Grand Jury, or prosecutor’s files pertaining thereto, this court would not read Justice Jaspan’s opinion as an absolute bar or disclosure of such material, provided the interests of justice so require, nor, unlike the holding in Karassik (supra), is Justice Jaspan’s opinion binding on this court in any event.
Finally, as provided by CPL 160.50, and as Judge Kupferman urged in his partially concurring and partially dissenting opinion in Karassik (63 AD2d 597, supra), resolution of an issue of sealing would not be complete without a discussion of the interests of justice. As counsel for defendant Loretta Neuman points out, it is a fact that Westchester County Indictment 905/76 was dismissed as against her for legally insufficient evidence back in 1977, and that the Special Prosecutor has not subsequently resubmitted any charge before any Westchester County Grand Jury as to either Loretta Neuman or her husband Dr. Carl Neuman, despite the fact that legally *328 sufficient evidence was presented as to him. However, it is also a fact that in May of 1978, a Nassau County Grand Jury commenced its own investigation of Dr. Neuman, doing business there as the Lydia E. Hall and Syosset Hospitals. Subsequently, subpoenas were issued there for records of Dr. Neuman and two of his accountants, which, as the Special Prosecutor notes, included, among others, the books and records of the corporate entity Continued Care Facilities, Inc. (C.C.F.) of which Dr. Neuman is a director, and which owns the land, building, and equipment of the Sarah Neuman Nursing Home here in Westchester County and the James Square Nursing Home, located in Syracuse, both of which are operated by Dr. Neuman. This relationship between Dr. Neuman and C.C.F. surfaced here in Westchester both at the time of the 1976 indictment and later in 1978 when this court denied Dr. Neuman’s motion to quash respondent’s renewed subpoenas for certain of his business records, including those of C.C.F. (See Matter of Neuman v Hynes, Supreme Ct, Westchester County, May 17, 1978, McNab, J., affd 65 AD2d 753, mot for lv to opp den 46 NY2d 709.) Significantly, in sustaining the subpoenas issued in relation to Dr. Neuman’s two hospitals in Nassau County, the Court of Appeals, in Mann Judd Landau v Hynes (49 NY2d 128) also recognized the complexity and interrelationship of the multitude of health care entities, corporate and otherwise, operated by Dr. Neuman, noting (at p 138) that "the investigation encompasses a most complex field and requires painstaking efforts to disentangle the financial web of the hospital industry.” Given the fact of such far-flung and interrelated enterprises, and given the fact that the subpoenas issued with respect to the Nassau County Grand Jury have now been sustained by this State’s highest court, this court is constrained to find, in the interests of justice, that the Special Prosecutor’s audit and investigative reports, et al., prepared during that previous investigation, should not be sealed. It should be borne in mind that the investigative power of a Grand Jury, such as that presently sitting in Nassau County, is "exceedingly broad”, and " 'is not fully carried out until every available clue has been run down’ ”. (See Matter of Grand Jury Subpoenas [Morgenthau], 58 AD2d 1, 3, 4, citing, inter alla, Blair v United States, 250 US 273, and United States v Stone, 429 F2d 138, 140; and see Matter of Maison & Co. v Hynes, 50 AD2d 13.) And it should be noted that in dismissing the 1976 Westchester indictment against Loretta Neuman, this court discussed certain business practices engaged in by her, doing business as Neuman & Susan, *329 Inc. (previously "Interiors by Ditmas”), an interior decorating company which had decorated the Sarah Neuman Nursing Home. While noting as "extremely shaky” the Special Prosecutor’s contention that this company constituted a "related company” vis-á-vis the nursing home, the court emphasized that the tenuousness of that position arose "under the deñnition of 'related company’ as it existed prior to 1974.” (See People v Neuman, NYLJ, March 24, 1977, p 13, cols 2, 4, supra; emphasis supplied.) Additionally, the court also characterized as "rather questionable” the business practices of Loretta’s decorating company in relation to the nursing home, and concluded that while the evidence at the Grand Jury appeared insufficient to charge her with filing a false instrument and grand larceny with respect to HE-2P forms filed with the State Health Department for the nursing home which she herself had not signed or reviewed, that arguendo it may have been enough to have made her a coconspirator. Under any view, a good faith nexus vis-á-vis Loretta Neuman and the business operations of her husband, Dr. Carl Neuman, was certainly established.
By way of caveat, however, the court would note that the investigation into the Neumans’ various enterprises is now in its fifth year. While the court fully shares the view expressed by the Court of Appeals in Mann Judd Landau (supra) that any investigation such as this one is admittedly painstaking, it must nonetheless come to an end at some point. This court hopes that the decision reached herein will serve to expedite this process, since it is this court’s view that the interests of justice are served both by insuring the prosecutor a full and fair investigation as well as by affording the targets of the investigation the knowledge that a cloud of suspicion is not to hang over their heads forever.
Thus, the branch of petitioner’s motion calling for the return of photographs, fingerprints, etc., would be granted; however, that branch seeking an order to seal all "official records and papers relating to the arrest and prosecution of Loretta Neuman, on file with the Office of the Special Prosecutor”, would be denied, for those reasons discussed herein. The same rulings hereby apply vis-á-vis Dr. Carl Neuman. The court feels that based upon the motion papers and the oral arguments and the court’s prior and intimate familiarity with this case, that it has sufficient facts before it to decide the motion without a hearing.

 This court granted Dr. Carl Neuman’s request to join in this application at oral argument, upon the Special Prosecutor’s consent and with the understanding that Carl Neuman would equally be bound by the ruling herein.