OPINION OF THE COURT
Phylis Skloot Bamberger, J.
The issue in this case is whether various documents should, pursuant to CPL 160.50 (1), remain unsealed after dismissal of the charges against defendant. The People’s motion to keep certain documents unsealed is granted.

1. Prior Proceedings

The defendant was indicted for grand larceny in the second degree and conspiracy in the first degree. Fazal Shah was also indicted and is a fugitive. The charges arose from an alleged scheme that defrauded the New York State Medicaid system of over $500,000. The theory of the People’s case was that the defendant helped cause the submission to Medicaid of claims for payment that were based on false statements that sonograms had been taken and then read by radiologists in connection with the diagnosis and treatment of thousands of Medicaid patients. In reliance on these false statements, the State paid the claims. The indictment asserted that the scheme to defraud was carried out by the defendant and others who made multiple sonograms of the same person, attributed the names of real Medicaid patients to the sonograms of a person who was not a Medicaid patient, and used without permission physicians’ names as having referred patients for sonograms when no such referrals had been made.
On January 12, 1995, the People advised the court that a key witness had changed his testimony and that the defendant’s participation in the criminal activities within the Statute of Limitations period could not be proven. The People requested that the case be dismissed and their motion was granted.
At the same proceeding, the prosecutor filed a motion pursuant to CPL 160.50 (1) asking that the records of the proceeding not be sealed. The basis of the prosecutor’s application was that the Civil Recovery Unit of the Office of the Special Prosecutor for Medicaid Fraud wants to use the records obtained by the People during its investigation and prosecution of this case to recover, through a civil action *556 pending against the defendant, the money that the People allege was stolen by the defendant. This court ordered that all sealing be stayed on January 12th and then extended the order on March 17, 1995.
The defendant had the opportunity to respond to this motion and on February 10, 1995, this court heard argument on the People’s motion. In addition to this argument, further submissions were made by the parties on January 23, 1995, January 26, 1995, February 2, 1995, February 6, 1995, February 13, 1995, February 24, 1995, February 27, 1995, February 28, 1995, March 9, 1995 and March 17, 1995, and additional argument was held on March 17, 1995.
During the February 10th argument, the defendant conceded that the Special Prosecutor for Medicaid Fraud may use all the records it obtained during its investigation of the codefendant to prosecute the codefendant and to prosecute any other person involved in this Medicaid fraud scheme who has not yet been indicted. Similarly, the People agreed to return the photographs and fingerprints of the defendant pursuant to CPL 160.50 (1) (a) and (b), and to return the defendant’s handwriting exemplars. They also agreed that they would not release the transcript of the Grand Jury proceeding to the Civil Recovery Unit.
The remaining materials subject to this motion are, generally categorized,[1] the records found in the basement of the Bronx Medical Company, the books and records of Med Management, the bank records subpoenaed during the course of the case, the financial records subpoenaed during the course of the case, the log sheets of various sonogram companies allegedly involved in the fraud, the sonogram records of Drs. Sokol and Kabnick and the records obtained from a doctor referred to here as Dr. Doe and whose name the People shall submit to this court.[2]
2. The Records at Issue in this Case Do Not Come Within the Purview of CPL 160.50 (1)
CPL 160.50 (1) authorizes the sealing of the record of an action against a defendant in instances in which the action *557 was terminated favorably to the defendant[3] and CPL 160.50 (1) (c) applies the sealing requirement to "all official records and papers [with limited exceptions not relevant here] * * * on file with * * * prosecutor’s office.” Such sealed records shall "not be made available to any person or public or private agency.”
None of the documents that the prosecutor seeks to keep unsealed are "official” records and papers within the statute and for that reason they should not be sealed.[4] Some of the documents of concern were obtained from at least seven banks. These records relate to the following companies and individuals: the Bronx Medical Center, Soundview Medical Building, Inc., BMZ Royalty, ANZ Ultrasound, M.S. Medical Associates, the defendant, Syed Fazal Shah, the defendant’s wife, Dr. Franklin Turetz, Nadir Husain, Queens Radiology, Queens Sonography Center, Dr. Amir Borzouye, and Nkeng *558 Alexander Tajong. Other documents that the prosecutor seeks to keep unsealed are Medicaid service provider records including sonograms, Medicaid remittance statements, sonogram request forms, tapes, reports of patients, and Medicaid billing forms. These records were obtained from doctors, other service providers and companies that process the claims for payment and forward them to Medicaid.[5]
None of these records are related to the defendant’s arrest or prosecution. They were not created as part of the investigation or for the litigation. Rather, they were created and kept as part of the business of banking, of providing services and seeking reimbursement under Medicaid, and of providing health care to eligible patients. They are not records of the prosecutor, the police or the courts and are not official. (Cf., Matter of Dondi, 63 NY2d 331 [1984] [a surreptitiously made tape between a police officer and the defendant that was created during an investigation of the defendant comes within CPL 160.50 (1) (c)].)
Many of these records in the possession of the prosecutor were obtained by subpoena from the doctors or banks or service providers. Indeed, the prosecutor testified that her office had issued 100 to 150 subpoenas in connection with the investigation of sonogram companies and the people associated with those companies.[6] If these records were considered "official” and consequently sealed under CPL 160.50 (1), they would have to be made available to the defendant or his agent but could not be made available to any person or public or *559 private agency except as set out in CPL 160.50 (1) (d) (i) through (vi), which concern limited law enforcement needs. If defendant’s argument were to prevail, the banks, doctors, and other service providers, in other words third parties to the prosecution who gave up records in response to subpoenas, would be unable to regain their records. Instead, they would be given to the defendant who could then destroy them. The defendant’s interpretation of the statute would preclude the return of property or documents to any person or agency who in good faith responds to legal process to produce documents or property for a proceeding.
Aside from raising serious due process issues on behalf of the record or property owner, this reading of the statute jeopardizes the ability of the third-party record or property owner to comply with legal requirements of business record keeping, to satisfy the demands of taxing officials, and, specifically in these Medicaid fraud cases, to have available records of treatment of or procedures done to patients.

3. The Interests of Justice Plainly Favor Leaving the Records of this Case Unsealed

Not only does this court find that the records at issue here are not subject to sealing, but it also finds that the interests of justice test of CPL 160.50 (1) justifies nonsealing. CPL 160.50 (1) includes as an exception to the general sealing requirement an interests of justice clause that permits the court, on its own motion or upon the motion of the District Attorney,[7] to order that the record of an action remain unsealed. The following reasons support leaving the record unsealed.
This court finds, based upon the prosecutor’s argument, that the records obtained in the criminal investigation and prosecution are also necessary to prove in a civil case that the defendant wrongfully obtained funds from New York’s Medicaid system and that the State is entitled to reimbursement from the defendant. The failure of the criminal action against the defendant because of a time bar should not prevent *560 reimbursement to New York if it can prove the fraud in a civil proceeding. The Legislature fully expected that one proceeding might continue although the other could not proceed; it enacted different Statutes of Limitations for criminal and civil actions. The criminal limitation period is five years and begins when the unlawful act is committed (CPL 30.10 [2] [b]); the civil limitation period is six years and begins when the State discovers the facts to be relied upon. (CPLR 213 [5].)
The particular nature of the Medicaid system makes the civil limitations period especially significant. It is difficult to root out fraudulent claims from the millions of claims made each year for Medicaid payment. An extended period is often needed before regular audit procedures uncover a pattern of illegal behavior triggering a full-scale investigation. The civil Statute of Limitations enables the State to seek to recover its losses even if the investigation is prolonged due to the complexities of the Medicaid reimbursement system.
Further, the State has a very significant interest in pursuing the civil action in order to regain the money if it was wrongfully taken from the public coffers. (See, Executive Order No. 72 of Governor Hugh L. Carey [June 5, 1978] [9 NYCRR 3.72].) This interest, while always important, has a particular poignancy at the present time because of the efforts to reduce the money available to Medicaid and because of the impact of reductions upon the poor of this community. Money allocated must go to the care of those in the community, not into the pockets of those who defraud the system.
The prosecutor has asserted that the relevant bank records in the possession of the Special Prosecutor are the only remaining copies of those records because the original records have been destroyed. Her position is premised on the return to subpoenas issued in the civil case. The records are therefore essential to enable the State to meet its burden of proof in the civil case and should not be sealed for that reason. (Cf., Hynes v Karassik, 47 NY2d, at 665 [1979], supra; Abrams v Skolnik, 185 AD2d 407, 409 [3d Dept 1992] [the interests of justice warrant unsealing of records when they are not available from other sources].) The same is true of the Medicaid records obtained by subpoena from third parties or found in the basement of a building. The sonograms attached to the billing forms cannot be duplicated at this point. Further, the nature of Medicaid billing is such that the sonogram and the form to which it is attached must be examined as a unit in order to understand the fraudulent nature of the claim.
*561 Sound policy also supports the conclusion that these records should not be sealed. If the records at issue in this case were required to be sealed, the law would have the perverse effect of depriving the State of the opportunity to seek repayment in a civil suit because the prosecutor in this criminal case was efficient and thorough. Conversely, if the prosecutor had not carefully investigated the criminal case, sealing would not adversely affect the State. The quality of the criminal investigation should not determine whether the State can make itself whole.
Lastly, the purpose of CPL 160.50 (1) fully supports a finding that the interests of justice test is satisfied in this case. Sealing is intended to prevent discrimination in employment, education, licensing and insurance coverage due to the dismissed criminal charge (People v Patterson, 78 NY2d 711, 715-716 [1991]), and to prevent an accused from suffering adverse consequences on the basis of a mere accusation. (Supra, at 716 [referring to Governor’s Approval Mem, op. cit.];[8] Hynes v Karassik, 47 NY2d, at 662, supra.) Sealing was not intended to protect the defendant from repaying any money wrongfully taken. In addition, the People have agreed that the records of the criminal proceeding accusing the defendant of a crime will be sealed and they will not release the Grand Jury transcript to the Civil Recovery Unit. In this way, the People’s request is not overbroad and comports with the purpose of the statute. No one will know from those records that remain unsealed that the defendant has been charged with a crime. Neither the bank records nor Medicaid records per se disclose that the defendant was accused of a crime.

4. The Defense Arguments

In his argument, the defendant ignores the interests of justice clause in CPL 160.50 (1) and claims that this court must determine the motion on the basis of CPL 160.50 (1) (d) (ii), which authorizes the unsealing of sealed records for limited purposes. He further argues that the limited purposes do not exist in this case. To make his argument, the defendant *562 relies upon People v Abedi (159 Misc 2d 1010 [Sup Ct, NY County 1994]), in which the court noted that CPL 160.50 (1) contains two interests of justice clauses but concluded that they were almost the same. This court does not accept the conclusion of Abedi.
CPL 160.50 (1) explicitly establishes two distinct procedures. First, in the initial clause of CPL 160.50 (1), a procedure is set out to prevent the sealing of records upon termination of the proceeding in favor of the accused. Second, in CPL 160.50 (1) (d), a procedure is set out to permit release of sealed records to specific categories of persons or agencies. As relevant to the defendant’s argument, CPL 160.50 (1) (d) (ii) allows release of records to a law enforcement agency on a showing that the interests of justice require unsealing.[9] Each of the procedures includes its own the interest of justice provision. If, as defendant asserts, the two situations were treated identically, the interests of justice provision to prevent sealing in CPL 160.50 (1) would be rendered surplusage. Such a reading of this statute violates the statutory maxim that the courts should give meaning to every word of a statute and should not ignore some of its provisions. (Matter of Costello v Geiser, 85 NY2d 103, 109 [1995]; Matter of Bliss v Bliss, 66 NY2d 383, 389 [1985].)
The interests of justice test differs in CPL 160.50 (1) and 160.50 (1) (d) (ii). After a sealing order issues, CPL 160.50 (1) (d) (ii) authorizes a motion by any law enforcement agency but authorizes unsealing only if justice requires release of the documents to the very agency making the motion. To prevent sealing, under CPL 160.50 (1) the District Attorney need show only that the interests of justice permit such relief without limitation as to the use of the file. This difference in language creates a substantial difference in the burden placed on the party making the request and demonstrates that the Legislature created two procedures with substantially different potential outcomes.
*563 Further indication that two procedures are included in CPL 160.50 (1) is that the initial clause in CPL 160.50 (1) authorizes the prevention of the sealing only on notice to the defendant, but the unsealing pursuant to CPL 160.50 (1) (d) (ii) can be requested in an ex parte application to the court. Accordingly, if this application had to be treated as an unsealing rather than a prevention of sealing, this court could ignore all of defendant’s arguments and not consider his arguments that the interests of justice should require sealing.
The difference in the interest of justice test in the two clauses also puts to rest another of the arguments made by the defense. The defense claimed that the Civil Division of the Attorney-General’s office should make the application in this case, but then argued that the Civil Division could not make such a motion because it was not a law enforcement agency. A motion to preclude sealing can be made under CPL 160.50 (1) for any reason in the interests of justice. Thus, the District Attorney can make the request on behalf of any agency. Just as significant, the Attorney-General of the State has authorized the Deputy Attorney-General/Special Prosecutor for Nursing Homes Health and Social Services to take action by way of civil suits for improper Medicaid payments. (See, letters of May 8, 1980, and Dec. 17, 1980, from Attorney-General Robert Abrams to Charles J. Hynes and Edward J. Kuriansky, respectively.) Accordingly, the Civil Recovery Unit could act under CPL 160.50 (1) (d) (ii) if that procedure were relevant to this motion.
The motion to keep the records set out in the Appendix unsealed is granted.

. The specific records are set out in the Appendix and is a reproduction of a list supplied by the Attorney-General.

. The People have requested that the name of this doctor not be placed in this opinion because of their special investigative needs.

. The relevant portions of CPL 160.50 (1) are:
"Upon the termination of a criminal action or proceeding against a person in favor of such person, as defined in subdivision three of this section, unless the district attorney upon motion with not less than five days notice to such person or his or her attorney demonstrates to the satisfaction of the court that the interests of justice require otherwise, or the court on its own motion with not less than five days notice to such person or his or her attorney determines that the interests of justice require otherwise and states the reasons for such determination on the record, the record of such action or proceeding shall be sealed and the clerk of the court wherein such criminal action or proceeding was terminated shall immediately notify the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies that the action has been terminated in favor of the accused, and unless the court has directed otherwise, that the record of such action or proceeding shall be sealed. Upon receipt of notification of such termination and sealing * * *
"(c) all official records and papers, including judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal, relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor’s office shall be sealed and not made available to any person or public or private agency;
"(d) such records shall be made available to the person accused or to such person’s designated agent, and shall be made available to * * * (ii) a law enforcement agency upon ex parte motion in any superior court, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it”.

. There is almost no guidance on the issue of what constitutes a record or document that is official. (Hynes v Karassik, 63 AD2d 597, 598 [1st Dept 1978], affd on other grounds 47 NY2d 659 [1979].) The only "records” mentioned in the Governor’s Approval Memorandum are the defendant’s fingerprints and photographs and his "arrest records.” (Governor’s Mem approving L 1976, ch 877, 1976 McKinney’s Session Laws of NY, at 2451.) The memo says these items are to be returned to the defendant.

. The documents for making a claim to Medicaid for sonogram services are the doctor’s referral or request for a sonogram, the sonogram (which is usually taken by a technician and attached to the referral), and the radiologist’s report of the reading of the sonogram. Special companies have been set up to help doctors process the claims. Frequently, the practice of these companies is to supply the sonogram technician and equipment to take the sonograms and to have radiologists on contract to read the sonograms. The company then prepares the billing form and transmits the claim to the Medicaid office, either electronically with a certification that the claim is accurate or based on the original documentation. The Medicaid office then draws a check and returns a remittance statement to the company showing those claims that have been paid, those rejected and other dispositions. (See, People v Evans, 155 Misc 2d 348 [Sup Ct, Bronx County 1992].)

. This testimony was given by the prosecutor at a hearing on the defendant’s motion to dismiss the indictment on the basis that this prosecution was barred by the Statute of Limitations. The defense motion to dismiss was denied but, as already noted, a change in a witness’ testimony resulted in a motion by the People to dismiss.

. The Attorney-General and his or her deputies act as a District Attorney whenever the Attorney-General is authorized to do so by the Governor. (Executive Law § 63 [2].) The Attorney-General can also act as prosecutor at the request of a State agency. (Executive Law § 63 [3].) The People provided proof establishing that the Office of the Special Prosecutor for Medicaid Fraud Control has been authorized under the Executive Law to pursue criminal and civil proceedings.

. In Patterson (supra), an arrest photo was left unsealed and used to identify the defendant in the investigation of a subsequent crime. The Court found the failure to seal and resulting use of the photograph did not violate CPL 160.50 (1) because no interest protected by sealing was involved. Here, too, no interest protected by sealing is of concern, and that is a factor supporting a refusal to seal the documents.

. The other limited categories of authorized persons or agencies are: CPL 160.50 (1) (d) (i) allows release to a prosecutor in a marijuana case sealed records when the accused seeks an adjournment in contemplation of dismissal; CPL 160.50 (1) (d) (iii) allows release to an agency reviewing a gun license application; CPL 160.50 (1) (d) (iv) and (vi) allow release to the Division of Parole and the Department of Probation when these agencies are investigating a violation of parole or probation; and CPL 160.50 (1) (d) (v) permits release to an agency considering an application for employment as a peace or police officer.