OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant was indicted for robbery in the first degree *90 and related charges. A Wade hearing was commenced prior to trial. The complainant appeared but adamantly refused to testify in the courtroom so long as the defendant was present. The court was reluctantly compelled to dismiss the indictment, but ordered that the records remain unsealed. The defendant now moves for (1) the sealing of all official records and papers concerning the instant indictment and (2) the return of the defendant’s photographs, fingerprints and palm prints. The People oppose the defendant’s application. This written decision supplements the oral decision previously rendered. The court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
On May 30, 1995, two aged cases were assigned to this court for hearings and trial. Indictment No. 1016/93 charged the defendant with rape in the first degree, robbery in the first degree and related charges. Indictment No. 900/93, the instant matter, charged the defendant with robbery in the first degree and related charges.
The prosecution elected to try indictment No. 1016/93 first. In a jury trial, the complainant testified that the defendant forcibly entered her premises and raped and robbed her at gunpoint during a 20-minute spree of terror. The police were promptly notified and obtained a detailed description of the perpetrator. The description revealed that the assailant had an unusual appearance: he was young, big and had a shiny bald head. The defendant was arrested two weeks after the incident when the victim pointed him out on the street. He matched the description previously supplied.
Immediately after the incident, the victim was examined at a local hospital where semen was recovered from her vaginal cavity. The victim also revealed that she had sexual intercourse with her boyfriend the evening before the morning rape. Accordingly, a blood sample was obtained from him with his consent. A sample of the defendant’s blood was obtained by court order. The semen recovered from the victim consisted of a mixed sample of the boyfriend and the assailant. As fortune would have it, the defendant’s blood sample and the boyfriend’s blood sample each revealed the exact same DNA PCR DQ-Alpha genetic profile, to wit: 1.2, 4. Accordingly, DNA PCR tests conducted on the semen recovered from the complainant did not exclude the defendant as a source of the semen but *91 were inconclusive. Nonetheless, the DNA results were received in evidence by stipulation between the parties. However, the stipulation required the court to instruct the jury that the DNA tests could only be used as evidence that the defendant was not excluded from a class of people who might have deposited the sperm sample. This stipulation was in accordance with the expert’s report on the DNA PCR testing results.
The defendant testified in his own behalf. He denied being the rapist and claimed that he was on his way to work on the date and time in question. He denied ever being on the street where the victim lived. The defense also presented a witness who claimed that the defendant was on his way to work on the date and approximate time in question. However, this witness’ testimony did not exclude the defendant’s presence at the scene at the block of time in question. A second defense witness testified that the defendant was at work in the morning hours. However, it was established on cross-examination that the defendant’s time card indicated this was the first time he was late for work. This evidence also did not exclude his presence at the scene.
On June 7, 1995, the jury acquitted the defendant of all charges. On June 9,1995, the instant indictment was scheduled for hearings and trial. In this case, the female victim promptly reported the details of a push-in gunpoint robbery wherein the assailant ran when the victim screamed. She described the perpetrator as a large young man with a shiny bald head and later identified the defendant at a lineup. The People were not ready to proceed on both June 9, 1995 and June 16, 1995 because the complainant, the only witness in the case who could offer evidence in support of the charges against the defendant, failed to appear in court.
On July 3, 1995 the court ordered the Wade hearing to commence. The People called Detective Richard Johnson. However, they could not rest their case without the complainant’s testimony to clarify whether anything suggestive occurred when an investigator escorted her to the precinct to view the lineup. The People were unable to continue their case on the Wade hearing because the complainant failed to appear to testify for the third time. The court granted the People’s request for a brief adjournment.
On July 5, 1995, the complainant appeared in the District Attorney’s office and agreed to testify only if the defendant was not present. The assigned Assistant District Attorney and her supervisor spoke with the victim for approximately three *92 hours to try to persuade her of the impossibility of her request. However, even with these lengthy discussions, she refused to appear in the same room as the defendant. She was then escorted to the robing room where she was interviewed by this court in the presence of the defense attorney and prosecutor for a substantial period of time. She maintained her willingness to testify, her insistence on the defendant’s guilt, and her firm refusal to testify in the defendant’s presence. Her continued refusal to cooperate, despite the court’s urging, resulted in her excusal from further participation in the proceedings.
The court could make only partial findings of fact on the aborted Wade hearing and reluctantly granted the defendant’s motion to suppress both the out-of-court and in-court identifications of the defendant by the victim. The indictment was thereafter dismissed with leave granted to the People to file a DOR.[1] The court ordered that the file remain unsealed. The defendant subsequently filed the instant motion.
CONCLUSIONS OF LAW
CPL 160.50 (1) provides that upon the termination of a criminal action or proceeding against a person in favor of such person, the record of the action or proceeding shall be sealed unless the interests of justice require otherwise. The District Attorney or the court may move for the records to remain unsealed. In either case, the court must state its reasons for any decision not to seal the action on the record.
CPL 160.50 became effective in 1976 to replace section 79-e of the Civil Rights Law and section 516 of the Penal Law of 1909. The current law differs from the predecessor statutes in two important respects. First, the sealing of records is authorized in addition to the return of photographs, palm prints and fingerprints. Second, the statute defines the 12 circumstances an action or proceeding is considered terminated in favor of a person. (People v Blackman, 90 Misc 2d 977, 978 [Crim Ct, Queens County 1977]; People v Casella, 90 Misc 2d 442, 445 [Crim Ct, Richmond County 1977]; CPL 160.50 [3].)
As the Court of Appeals has stated, CPL 160.50 was enacted to insure "that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation. That detriment to one’s reputation and employment prospects often flows from merely *93 having been subjected to criminal process has long been recognized as a serious and unfortunate by-product of even unsuccessful prosecutions.” (Matter of Hynes v Karassik, 47 NY2d 659, 662 [1979];[2] see also, Matter of Joseph M., 82 NY2d 128, 131 [1993]; People v Patterson, 78 NY2d 711, 716 [1991].)
This court is confronted with two questions: (1) Was the action terminated in favor of the accused, and, if so, (2) do the interests of justice require that the records remain unsealed?
CPL 160.50 (3) dictates when an action is considered terminated in favor of an accused for the purposes of sealing. Dismissals of felony indictments that fall within the gambit of this section include dismissals on appeal, dismissals of indictments or a count thereof pursuant to CPL 210.20, acquittals after trial, trial orders of dismissal from which no appeals are taken, orders setting aside verdicts, and dismissals by a Grand Jury. (CPL 160.50 [3].) The Legislature’s exhaustive listing of when an action may be considered terminated in favor of the defendant for purposes of this statute removes the court’s need to interpret the phrase " 'terminated in favor of such person.’ ” (People v Blackman, supra, at 978.) As the Blackman court stated: "Once the Legislature has explicitly and specifically set forth the circumstances under which a proceeding can be deemed terminated favorably to a defendant, there is no longer any room for judicial interpretation or to seek the intent of the Legislature. The intent js specifically set forth * * * In such case the Legislature has mandated the meaning of 'terminated in favor of such person’ and the court is bound by such mandate. If the Legislature was guilty of an oversight, it is up to that body to correct it. Under the circumstances of the clear definitions of CPL 160.50 * * * judicial action to fill a void, if one exists, would be unwarranted.” (People v Blackman, supra, at 979; see also, People v Casella, supra, at 451 [the comprehensive list of situations which constitute a favorable determination renders the statute’s meaning clear; there is no need for court interpretation].)
In the instant case, the indictment was dismissed when the People failed to meet their burden at the Wade hearing. Once the identifications were suppressed, the People were no longer able to proceed to trial. There were no other witnesses to the *94 incident. Hence, there was no manner in which the People could proceed to trial absent the victim’s identification.[3] The People’s inability to-present any evidence linking the defendant to the crimes charged created a legal impediment to a conviction of this defendant. Accordingly, the indictment was dismissed pursuant to CPL 210.20 (1) (h). Such a dismissal is included in the exhaustive list of terminations of a criminal action in favor of a defendant set forth in CPL 160.50 (3). The court must now consider the second issue: Whether the interests of justice require sealing in this particular case.
Although the statute dictates when an action or proceeding may be considered terminated in favor of an accused, the court still retains discretion in determining whether records of a criminal action terminated in favor of a person may remain unsealed. The court must apply the interests of justice standard to the facts of the case. (CPL 160.50 [1].) "[Ejach court must proceed in a case-by-case basis and consider all factors presented before granting or denying such relief’. (People ex rel. Phoenix v District Attorney of Onondaga County, 95 Misc 2d 573, 576 [Onondaga County Ct 1978] [discussing a movant’s criminal record as a factor to consider].)
In People v Neuman (104 Misc 2d 324 [Sup Ct, Westchester County 1980]), the defendants moved to seal the record of two indictments dismissed by the court two years earlier. The Special Prosecutor had never resubmitted either case to another Grand Jury. The court granted the defendant’s motion for return of any and all photographs and prints on consent of the prosecution. However, it denied the motion to seal certain other records on the grounds that the papers claimed by the defendants .to be official records, investigative and credit reports prepared by the Special Prosecutor’s office, were not so defined pursuant to CPL 160.50. In denying the defendants’ motion, the court stressed that the records in question were relevant to other jurisdictions’ pending investigations of the defendant’s "farflung and interrelated enterprises” and that the Court of Appeals had upheld subpoenas issued by another Grand Jury in another jurisdiction. The court was "constrained to find, in the interests of justice, that the Special Prosecutor’s audit and investigative reports * * * should not be sealed.” (People v Neuman, supra, at 328; see also, Matter of Hynes v Karassik, supra.)
*95 In People v Abedi (159 Misc 2d 1010 [Sup Ct, NY County 1994]), the People moved to stay sealing of the case against one defendant who had been acquitted and a second defendant against whom the indictment had been dismissed. The prosecution claimed that numerous other proceedings could not be fairly and effectively resolved without resort to the record in question. The court found that the "interests of justice” exception to sealing "must permit sealing to be stayed in circumstances beyond the exceptions in CPL 160.50 (1) (d), otherwise the language would not be needed.”[4] (People v Abedi, supra, at 1014.) The court noted that the Legislature could not have "intended to create broad exceptions to the sealing requirement whenever the District Attorney is quick to move to stop sealing, but only narrow exceptions to the sealing requirement when the desire for the records occurs immediately after sealing.” (People v Abedi, supra, at 1014.) The court found that the interests of justice clause "allows for postponement of sealing so that records and exhibits would be briefly available for purposes that might arise in particular cases” but "concluded that the introductory language to CPL 160.50 gives the Court little more scope to keep the records unsealed than it has to unseal.” (People v Abedi, supra, at 1015.) The court denied the prosecution’s motion on the ground that the District Attorney’s reasons to stay sealing did not justify such a decision. The court found, however, that the proposed uses of the record would justify unsealing if and when the appropriate party so moved. (People v Abedi, supra, at 1015-1016.)
In the instant case, one of first impression, the court has considered various factors in determining whether the interests of justice require sealing. Perhaps of greatest importance is that the complainant clearly and firmly maintained her allegations against the defendant throughout the proceedings. She was adamant that he is and was the person who robbed her. Her uncompromising refusal to testify in his presence was a legal bar to continuing the prosecution of the case and not a determination of the merits of the accusations. Accordingly, sealing should not be automatic.
The court must also consider the reason the victim failed to testify at the hearing. Although she voluntarily spoke with two prosecutors for several hours and with the court in the *96 defense attorney’s presence, she absolutely refused to testify in the defendant’s presence. The prospect of being face-to-face with the man she identified as the person who robbed her was so frightening that the victim would not even appear in open court. She was adamant in never again seeing the man who robbed her. Even when confronted with the possibility that the same or a similar crime might be visited upon another woman as a result of her failure to testify, the victim refused to cooperate in the prosecution of the case. The emotional upheaval and continued terror suffered by the victim that precluded her from testifying in open court was allegedly caused solely by the defendant. The severe fear and horror the defendant allegedly inflicted upon this woman when he victimized her prevented her from providing the prosecution with the evidence necessary to proceed with the case. No other factor contributed to her refusal to testify. The defendant’s alleged actions caused the victim’s refusal. Her refusal should not now automatically enure to his benefit.
Another factor to consider is the defendant’s record and his propensity for violence to women. While the court may and should consider the defendant’s record in deciding whether to seal the action, his criminal history cannot be the sole criteria in the court’s determination. (See, People v Amiger, 109 AD2d 1095 [4th Dept 1985] [unlike its predecessor statute, "CPL 160.50 does not preclude the granting of such relief on the basis of a movant’s criminal record and that factor alone is not sufficient to deny relief in the 'interest of justice’ ”]; People v Donner, 106 Misc 2d 779, 782-783 [Just Ct, Monroe County 1980] [defendant’s record alone insufficient reason to allow prosecution to deny defendant access to records of prosecutions terminated in her favor when interest of justice standard applied]; People ex rel. Phoenix v District Attorney of Onondaga County, 95 Misc 2d, supra, at 575 ["the extent of one’s past criminal record may be one factor among others in determining whether the requested relief should be granted (but) that factor alone does not preclude automatically the type of relief edvered by 160.50”].)
Although acquitted after a jury trial on another indictment, DNA forensic evidence did not exclude the defendant as a source of the semen recovered from that victim. The alibi evidence offered did not conclusively remove the defendant from the scene of the crime. Evidence that the defendant was arrested near the scene of the rape clearly refuted the defendant’s claimed lack of contact with the area. The numerous allega *97 tions establish that this defendant has a propensity to engage in systematic attacks on women. Law enforcement should be aware that this defendant is a possible danger to the community, especially females. Should he continue this history and victimize another woman, the police and prosecution should be cognizant of his background and history of assaultive behavior immediately upon any future arrest.
This court concludes that it must consider fairness to the community in protecting itself against a possible future predator as well as fairness to the defendant in determining whether to seal the record in the instant case. This court is of the opinion that the community at large will be well served if police and prosecutors are not delayed in obtaining the information contained in this record. These agencies should be aware at the time of initial investigations that this defendant has a criminal history identified by a specific modus operandi. In this case, there is a clear and demonstrated need for law enforcement to have the information contained in these records readily available.[5] Accordingly, society’s interests clearly outweigh any undefined interest of the defendant under the specific facts and circumstances of this case.
Therefore, it is this court’s judgment that the interests of justice require that the records of this criminal action remain unsealed. The defendant’s motion to seal the record and for return of photographs and fingerprints pursuant to CPL 160.50 is in all respects denied.[6]

. A "DOR” is a "discharge on own recognizance”.

. The Court of Appeals determined that tape recordings made during an investigation and introduced into evidence at trial were not official records subject to sealing. The Court denied a motion to unseal the records to obtain the tape recordings and noted that the material in question was available from a witness.

. This was not the situation provided for by Penal Law § 60.25 where the law permits the prosecution to cure a failure to obtain an in-court identification. The limited circumstances of that statutory provision did not exist in this case.

. Section 160.50 (1) (d) permits the unsealing of records to the person accused or his agent, prosecutors, law enforcement agencies, gun licensing agencies, parole authorities, prospective employers of police or peace officers and probation officials in certain circumstances.

. To this extent, this court believes that the facts and circumstances of a particular case may require that sealing be stayed in situations beyond those in People v Abedi and People v Neuman (supra).

. The court notes that it previously granted the defendant’s motion to seal the record of indictment No. 1016/93 after the verdict of acquittal.