People v Cruz (2004 NY Slip Op 50004(U))

[*1]

People v Cruz

2004 NY Slip Op 50004(U)

Decided on January 5, 2004

Supreme Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 5, 2004

Supreme Court, Bronx County
 THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
against
ERNESTO CRUZ, Defendant.
THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
against
ROHAN BROWN, Defendant.
Ind. No. 1627/2000
 Ind. No. 2533/2002

For the New York State Department of Parole:
ELIOT SPITZER, Attorney General of the State of New York
By: MELINDA CHESTER-SPITZER, ESQ., Assistant Attorney General

For Ernesto Cruz:
CHEDA & SHEEHAN
By: THOMAS SHEEHAN, ESQ.

For the People of the State of New York:
ROBERT T. JOHNSON, District Attorney of Bronx County, New York
By: PAUL ROSENFELD, ESQ., Senior Trial Assistant District 

Attorney For Rohan Brown:
BENJAMIN HEINRICH, ESQ.

Dominic R. Massaro, J.
In each of these cases, which have been consolidated for decision only, a third party is moving for an order pursuant to CPL § 160.50 to unseal a trial record that was terminated in favor of the accused. The issue presented is whether the unsealing of such records is authorized. Under the particular pleadings of each prayer, the Court finds in the affirmative.
Factual Setting
People v. Ernesto Cruz
People v. Ernesto Cruz, Indictment Number 1627/2000, was terminated in favor of the accused and sealed pursuant to CPL § 160.50. Mr. Cruz is now the petitioner in Cruz v. Ditucci-Capiello, Docket Number 03-CV-1686, in which he brings on a claim pursuant to 42 U.S.C. § 1983 in the Southern District of New York. In his Federal civil suit, Mr. Cruz is alleging that he [*2]was the victim of an illegal search and seizure, false arrest and imprisonment, and false prosecution arising out of the incident that formed the basis of the criminal proceeding in which he was acquitted. The respondent in the pending Federal matter, who is represented by the Attorney General of the State of New York, moves here to unseal the record of the underlying criminal case on the ground that it is needed in order to properly investigate Mr. Cruz's claims and to prepare a defense. The Attorney General further claims that by bringing the aforenoted civil suit, Mr. Cruz has effectively waived the protections afforded to him by CPL § 160.50. Mr. Cruz takes no position on the motion. 
People v. Rohan Brown
People v. Karl L.,[FN1] Indictment Number 6852/98, was terminated in favor of the accused and sealed pursuant to CPL § 160.50. Both the defendant in that case and the defendant herein have been accused of murdering one James Bauer.[FN2] Mr. Brown is now moving to unseal the record from Indictment Number 6852/98 on the basis that the same witnesses are expected to testify about the same matters at his trial, and, therefore, it is vital to his defense that he be allowed to examine that record. In addition, counsel has represented that he has attempted to notify the acquitted defendant of the pending motion without success. The People take no position on the motion. 
Statutory and Decisional History
Criminal Procedure Law Sections 160.50 states, in pertinent part, that:

160.50. 1. Upon the termination of a criminal action or proceeding against a person in favor of such person, . . . unless . . . the court on its own motion . . . determines that the interests of justice require otherwise and states the reasons for such determination on the record, the record of such action or proceeding shall be sealed. . . . and not made available to any person or public or private agency; (d) such records shall be made available to the person accused or to such person's designated agent, and shall be available to . . . (ii) a law enforcement agency upon ex parte motion in any superior court, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it.
As most recently explained by our Court of Appeals in Matter of Joseph M., 82 N.Y.2d 128, 131 (1993), "CPL § 160.50 was enacted in 1976 in the same reform legislation that added a provision to the Human Rights Law (now Executive Law § 296 [16]) . . . [which] protect[s] [*3]exonerated individuals from the unwarranted stigma that their employers or others could attach to dismissed criminal charges." See also People v. Patterson, 78 N.Y.2d 711 (1991). The high court based its decision, in part, on the Governor's Approval Memorandum in Support of S 9924-A, 1976 McKinney's Session Laws of New York, at 2451. In Matter of Harper v. Angiolillo, 89 N.Y.2d 761, 766 (1997), the Court of Appeals further noted that the purpose of these laws is to:

lessen the adverse consequences of unsuccessful criminal prosecutions by limiting access to official records and papers in criminal proceedings which terminate in favor of the accused (see, Governor's Approval Mem, 1976 NY Legis Ann, at 408, 409 ["This legislation is consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law"]). As we have previously noted, a person's reputation and employment prospects may be adversely affected even from an unsuccessful criminal prosecution (Matter of Hynes v. Karassik, 47 N.Y.2d 659, 662 [1979]). Consequently, the ambit of the sealing requirement is broad.
See also Joseph M., supra at 132 ("to effectuate this purpose, CPL § 160.50 employs language that is mandatory."); People v. Ellis, 184 A.D.2d 307 (1st Dept. 1992), lv. denied, 80 N.Y.2d 929 (1992); Matter of Wayne M., 121 Misc.2d 346, 348-49 (Family Ct. New York Cty. 1983) ("A motion to prevent sealing which states no special equities or unique facts peculiar to a particular prosecution at bar is in the final analysis, framed upon a disagreement with legislative articulation of the public policy of this State and is properly addressed to the Legislature rather than the court.").
However, in Harper, supra at 766-67, the Court of Appeals recognized that:

Notwithstanding these concerns, the Legislature has acknowledged the existence of countervailing considerations to the sealing of such records and papers. Thus, CPL § 160.50 contains "narrowly defined exceptions" which authorize the disclosure of sealed materials, under certain circumstances, to a limited group of third parties (Hynes, 47 N.Y.2d at 663). Consequently, a former defendant's interest in preventing the disclosure of official records and papers in a favorably terminated proceeding is not absolute.
It is well settled that CPL § 160.50 involves merely statutory, and not substantive or constitutional rights. As more fully explained in Patterson, (supra at 716), there is nothing in the legislative history of CPL § 160.50 conferring a constitutionally derived substantial right, "such that the violation of that statute, without more, would justify invocation of the exclusionary rule with respect to subsequent independent and unrelated criminal proceedings." Rather, the Legislature established procedures under the Executive Law to provide a civil remedy for a violation of a provision of CPL § 160.50. See also People v. Torres 291 A.D.2d 273, 274 (1st Dept. 2002) ("A photograph of defendant taken in connection with an unrelated arrest that had [*4]been sealed pursuant to CPL § 160.50 was properly received in evidence . . . [because] CPL § 160.50 did not implicate a constitutional protected right . . . [and] evidence obtained as the result of a statutory violation lacking constitutional implications has long been held admissible."), lv. denied, 98 N.Y.2d 681 (2002); Grandal v. City of New York, 966 F.Supp. 197, 200 (S.D.N.Y. 1997) ("The Constitution does not guarantee that only the guilty will be arrested."), citing, Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 442 (1979); Griffin v. Kelly, F.Supp.2d , No. 92 Civ. 8623 (LBS), 1994 WL 9670 (S.D.N.Y. 1994). This is in contrast to CPL § 240.45 (1) (a), the codification of the rule set forth under People v. Rosario, 9 N.Y.2d 286 (1961), cert. denied, sub nom., Rosario v. New York, 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961), which is based upon a defendant's Sixth Amendment right to confront his accuser. See also People v. Flores, 84 N.Y.2d 184, (1994) (purpose of Rosario is to insure that defense counsel, not judges, strategically view, weight and exercise a defendant's fair trial advocacy interests). 
Further, in Joseph M., supra, the Court of Appeals held that because the exceptions to CPL § 160.50 are "narrowly defined," a court does not have the inherent authority to unseal such records for use in, among other things, a teacher disciplinary proceeding; and in Matter of Dondi, 63 N.Y.2d 331, 339 (1984), it further noted that "[c]onvenience alone will not justify an unsealing." Therefore, it is with the above statutory and decisional history in mind that a determination must be taken whether unsealing is authorized in these two cases.
Discussion
At the outset, it is noted that testimonial evidence constitutes an "official record" subject to CPL § 160.50. Harper, supra; Dondi, supra. Thus, it is clear that both movants are requesting materials that constitute part of the "official record," as both are seeking to unseal the transcribed proceedings of the respective cases.
The Request of the Attorney General
Initially, although the Attorney General does have law enforcement authority under Executive Law § 63, it is not applicable here, where the Attorney General represents a defendant in a Federal civil suit. Therefore, CPL § 160.50 (1) (d) (ii) does not apply because the Attorney General is seeking to unseal a record in order to defend and not to use in a criminal investigation. See New York State Police v. Charles Q., 192 A.D.2d 142, 144 (1st Dept. 1993) ("[I]n conducting a disciplinary proceeding concerning one of its own employees, petitioner is acting as a public employer, not a 'law enforcement agency,' and is not entitled to obtain sealed records under CPL § 160.50 (1) (d) (ii)."), aff'd, 85 N.Y.2d 571 (1995); People v. Anthony R., 170 Misc.2d 626 (County Ct. Nassau Cty. 1996) (Internal Affairs Unit of the Nassau County Police Department is not a law enforcement agency when it investigates claim that a police officer filed false reports and testified falsely); Matter of the Application of the Police Commissioner of the City of New York v. Patrick M., 131 Misc.2d 695, 701 (Sup. Ct. New York Cty. 1986) (attorney disciplinary committee does not come under the law enforcement exception nor does the "Police Department when it seeks access to sealed records for use in departmental disciplinary proceedings").
It is noted that even though the Attorney General is making its request for use in a Federal civil suit brought pursuant to 42 U.S.C. § 1983, the matter is nonetheless properly before this Court because where a party in a Federal civil suit seeks to unseal matters that were in state [*5]court, it is correct to apply first to the court that possesses and controls the sealed records at issue. See Waterman v. City of New York, F.Supp.2d , No. 96 Civ. 1471 (AGS) (RLE), 1998 WL 23219 (S.D.N.Y. 1998). However, if the request is denied, that party may still apply to the Federal court "because although the supervisory court is usually in the best position to evaluate the competing needs in such cases, courts where related civil actions are pending are armed with special knowledge of the status of the civil actions." Waterman, id., citing Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 231, 99 S.Ct. 1667, 1679, 60 L.Ed.2d 156, 172 (1979). Therefore, the Court is mindful of the fact that if the movant is unsatisfied with a negative decision, he may still apply to the Southern District of New York to unseal the record. 
The reasoning behind this rule was explained in Cruz v. Kennedy, F.Supp.2d , No. 97 Civ. 4001 (KMW), 1997 WL 839483, at *1 (S.D.N.Y. 1997), in which that court held:

New York State law does not govern discoverability and confidentiality in federal civil rights actions. . . . Although in the spirit of comity, federal courts should consider state privacy rules in resolving discovery issues, these rules should never be permitted to frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as embodied in section 1983.
Likewise, in King v. Conde, 121 F.R.D. 180, 187-88 (E.D.N.Y. 1988), that court further recognized that:

Federal discovery is somewhat more liberal than New York State discovery. . . . [Where] no federal rule exists governing the kinds of privileges asserted in these cases, . . . the magistrate must balance the interests favoring and opposing confidentiality in the discovery phase of the litigation. The magistrate need not ignore state privacy rules. . . . [However,] [s]imple direct application of the state rule would be undesirable and improper. Federal law disfavors privileges barring disclosure of relevant evidence, and limits "even those rooted in the [federal] constitution." Herbert v. Lando, 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115, 133 (1979)[;] . . . Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976) (state privilege law, while not binding in federal question case, can be a useful reference).
See also Lehman v. Kornblau, 206 F.R.D. 345 (E.D.N.Y. 2001); accord, Morrison v. New York City Police Department, 225 A.D.2d 463 (1st Dept. 1996). In Svaigsen v. City of New York, 203 A.D.2d 32, 33 (1st Dept. 1994), it was held that "when a State court entertains a Federally created cause of action, the Federal right cannot be defeated by the forms of local practice. This being especially true of section 1983, which was enacted particularly to vindicate Federal rights against deprivation by state action." 
Although this Court is mindful that it is "appropriate that [it] follow Federal law when assessing the discoverability of documents sought by plaintiff," Svaigsen, id., it is also well [*6]settled that as long as state law on this issue is not contrary to the plain meaning of the Federal Rules of Discovery and 42 U.S.C. § 1983, it is completely proper for the Court to look to and rely upon state law in making its decision. In Ruther v. Boyle, 879 F.Supp. 247 (E.D.N.Y 1995), a petitioner in a 42 U.S.C. § 1983 suit, who was previously a defendant in a state criminal proceeding that was terminated in her favor and sealed, moved to unseal the underlying state matter. It was noted (at 249-50) that:

Because no federal rule expressly governs privileges asserted here, courts have fashioned balancing tests whereby the interests favoring disclosure and the interests favoring confidentiality under the privilege asserted are weighed. Moreover, while state law does not govern the scope of the privilege it may, where appropriate, supply a rule of decision or illustrate an important state policy to be considered by the judge weighing the competing interests.
See also McKenna v. Immigration and Naturalization Service, 217 F.3d 855 (Fed. Cir. 1999) (federal employee "not required to reveal an arrest that already has been dismissed and sealed . . . [because Congress] has determined that it will defer to state decisions to seal criminal records.").
Under our law, it is well recognized that "absent a waiver by the holder of that statutory privilege, a civil litigant has no right to procure or examine a sealed record. . . . Nor will unsealing be justified by the mere fact that information in the criminal records is relevant to issues in the civil claim." Ferreria v. Palladium Realty Partners, 160 Misc.2d 841, 842-43 (Sup. Ct. New York Cty. 1994). By way of contrast, in Matter of Levitov v. Cowhey, 270 A.D.2d 269 (2nd Dept. 2000), it was held that a court does not have discretion to deny application to unseal records where all of the acquitted defendants in the prior criminal actions provided a designation pursuant to CPL § 160.50 (1) (d). Thus, it is completely lawful for a defendant to waive his rights to seal under CPL § 160.50. Nor does this waiver need be expressly made.
Recently, in Rodriguez v. Ford Motor Company, 301 A.D.2d 372 (1st Dept. 2003), the First Department, relying on the Court of Appeals decision in Green v. Montgomery, 95 N.Y.2d 693 (2001), and the Second Department decision in Lundell v. Ford Motor Company, 120 A.D.2d 575 (2nd Dept. 1986), held that "where an individual affirmatively places the underlying conduct at issue by bringing a civil suit, the courts have consistently held that the statutory protection is waived. The privilege of CPL § 160.50 may not be used as a sword to gain an advantage in a civil action." In Rodriguez, a case is which the plaintiff was hit by a car being driven by one of the defendants, the First Department upheld the granting of the plaintiff's motion to unseal the record of the underlying criminal action against that defendant, which was terminated in his favor. The First Department reasoned that the defendant, "by denying that intoxication caused [him] to lose control of the car, and, by way of cross claim, seeking to put the blame for the accident on the car manufacturer, [has] affirmatively put the circumstances surrounding the driver's arrest and indictment in issue, and thus waived the protection afforded by CPL. § 160.50." Rodriguez, id.
In addition, there is a virtual cornucopia of case law from the Second, Third and Fourth Departments, as well as the Court of Claims, holding that a defendant makes an implicit waiver by filing a federal civil suit arising out of the same matter. Gebbie v. Gertz, 94 A.D.2d 165 (2nd Dept. 1983), relying on Koump v. Smith, 25 N.Y.2d 287 (1969), held that "the privilege [*7]conferred upon a criminal defendant pursuant to CPL § 160.50 is waived when he later institutes a civil action to recover damages for false arrest and malicious prosecution." This is because, in civil litigation, courts "will not allow [a] privilege to be used as a sword rather than a shield [which] place[s] a defendant in an impossible, intolerable, unjust and nondefensible position." Gebbie, supra at 174. It is especially true when claims of malicious prosecution and false imprisonment are raised because "the acquittal after trial or other dismissal of the criminal action is not dispositive of the civil suit." Id. at 171. Indeed, "the information contained in the records of the criminal proceeding is undoubtedly relevant and perhaps vital to the defense of the claim as bearing, among other things, on the issue of probable cause." Id. at 175. See also Commercial Union Insurance Company v. Jones, 216 A.D.2d 967 (4th Dept. 1995); Matter of the Claim of Weigand, 187 A.D.2d 791 (3rd Dept. 1992); Matter of Abrams v. Skolnik, 185 A.D.2d 407 (3rd Dept. 1992); Kalogris v. Roberts, 185 A.D.2d 335 (2nd Dept. 1992); Wright v. Snow, 175 A.D.2d 451 (3rd Dept. 1991), app. dismissed, 79 N.Y.2d 822 (1991); Taylor v. New York City Transit Authority, 131 A.D.2d 460 (2nd Dept. 1987); Lott v. Great Eastern Mall, 87 A.D.2d 978, 979 (4th Dept. 1982) ("plaintiff, by bringing [an] action for false arrest and malicious prosecution, has placed in issue the probable cause of the arrest and he has thus waived the confidentiality that the statutes afforded him [since said records] . . . are the very matters that will be the subject of this civil action and will be material to the defense of the action"), citing, Prink v. Rockefeller Center, 48 N.Y.2d 309 (1979); Matter of the City of Nassau v. Heine, 80 A.D.2d 640 (2nd Dept. 1981), lv. denied, 53 N.Y.2d 607 (1981). Thus, it is well established that a plaintiff has no concomitant right to maintain a civil action while insisting upon the enforcement of his CPL § 160.50 privilege. "Privileges, while important in the law, are not absolute." Green, supra at 699. 
Similarly here, Mr. Cruz has instituted a Federal civil action based upon his now sealed criminal case. Movant, who is the defendant in that Federal case, is clearly entitled to have the transcribed proceedings of the underlying case unsealed. In addition, in light of the fact that the Federal rules of discovery are more liberal that our state court rule, an unsealing of the record would no doubt be authorized under that standard as well.
The Request of Mr. Brown
It first should be noted that this motion would have been easily resolved in favor of the movant had he been able to obtain a waiver to unseal from the defendant under Indictment Number 6852/98. This attempt, via both counsel and directly, has failed. Although several courts have previously denied motions to unseal where the petitioner has failed to obtain such a waiver, and is neither a party protected by the privilege of CPL § 160.50 nor is one of the parties to which the statutory exceptions apply (see, e.g., Wilson v. City of New York, 240 A.D.2d 266, 267 [1st Dept. 1997]; Heine, supra), this factor alone does not end further evaluation of Mr. Brown's motion.
Our Court of Appeals has recognized that courts have an "inherent power" beyond the provisions of CPL § 160.50 to grant relief to release sealed records when the interests of justice so mandate and this power "grows out of that measure of discretionary authority courts enjoy with respect to their own records insofar as they pertain to the business of the court and when essential to the proper administration of justice." Matter of Hynes v. Karassik, 47 N.Y.2d 659, 664 (1979). In Hynes, the Court of Appeals held that although courts do not have the inherent [*8]power to unseal records pursuant to CPL § 160.50 in order to assist a bar grievance committee in determining whether to bring disciplinary action against an attorney, "cases might arise in which the exercise of a power to unseal would be appropriate." Id. 
In reaching its decision, the Court of Appeals in Hynes relied on Johnson v. State, 336 So.2d 93 (Florida 1976), a case in which the Florida Supreme Court held that this inherent power permitted state courts there to not follow a law passed by the state legislature requiring the destruction, rather than sealing, of certain judicial records on the ground that the courts have (at 95) "the power of administration of the court system, including the establishment of judicial rules of practice and procedure." See also Maxie v. Gimbel Brothers, 102 Misc.2d 296, 300 (Sup. Ct. New York Cty. 1979) ("[I]f the demands of justice dictate nonenforcement of the rule, or if the justice presiding . . . determines that . . . orderly processing of the litigated matter will better be served by compelling rather than restricting discovery, such a judge possesses the power to attain this goal.").
It must be noted that although in Joseph M., the Court of Appeals held that "[i]f there is to be an exception to this general rule  upon a showing of 'extraordinary circumstances' . . . of the type alleged here [unsealing to use in a teacher disciplinary hearing]  it should be created by the Legislature, not by the court," Joseph M., supra at 133-34 (emphasis added). This is altogether appropriate. Notwithstanding, Joseph M., did not specifically overrule Dondi, supra, and Hynes, supra. See People v. Canales, 174 Misc.2d 387, 390-91 (Sup. Ct. Bronx Cty. 1997) ( in order for a court to use this "inherent authority" to unseal records, the moving party had to "show that the information in the sealed records was relevant and could not be obtained by conventional investigative means"), citing, Dondi, supra at 338. 
Indeed, the First Department has opined that this inherent power to unseal in the interests of justice is also based on the language of CPL § 160.50 (1). Wilson, supra at 267 ("motion court that had jurisdiction over the criminal matter has authority pursuant to CPL § 160.50 (1) . . . to unseal the record in the interests of justice."); People v. Joseph W. F., 111 Misc.2d 752, 753 (Crim. Ct. New York Cty. 1981) ("CPL § 160.50 [1] contains a procedure by which . . . the court on its own motion may conclude that the interests of justice require that sealing be withheld," and to do so is "like the standard in CPL § 160.50 for withholding a sealing order or permitting limited unsealing."). Nevertheless, regardless of its basis, it is well settled that the movant must make a "compelling demonstration" in order for a court to exercise its discretionary power to permit the unsealing of criminal records to be invoked. Matter of Anonymous, 164 A.D.2d 225, 226 (1st Dept. 1990), lv. denied, 77 N.Y.2d 804 (1991). See also People v. John F., 174 Misc.2d 540, 545 (Dist Ct. Nassau Cty. 1997) ("[I]n determining whether to unseal the criminal records . . the applicant has the burden of proof by clear and convincing evidence to demonstrate that the applicant's interest outweigh the statutorily granted protection."); Journal Publishing Company v. Office of the Special Prosecutor, 131 Misc.2d 417, 421 (Sup. Ct. New York Cty. 1986) ("There may be an inherent power in the court to unseal when the interests of justice so require, and upon a demonstration of necessity.").
The courts of this state will not exercise this inherent power where "notably absent [from the application] is any allegation that other avenues of investigation had been exhausted or thwarted or that it was probable that the record contained information that was . . . not otherwise available by conventional investigative means." Charles Q., supra at 145. See also Matter of [*9]Anonymous, 95 A.D.2d 763, 764 (2nd Dept. 1983) ("[P]etitioner has failed to set forth any facts which would indicate that it will be unable to properly perform its investigatory function without the unsealing herein, and there has been no showing that the information contained therein is otherwise unavailable. Thus, we are not presented with a case in which unsealing is called for in order to serve fairness and justice.").
Likewise, it is also well settled that courts will not exercise this power when "it appears that this evidence is sought primarily for impeachment purposes." Charles Q. supra, at 145. See also People v. Magliore, 178 Misc.2d 489, 490, 492-95 (Crim Ct. Kings Cty. 1998) (refusing to unseal records where the "defendant offers no factual showing of the relevance of the content of those records to the issues to be resolved at trial, other than [the] hope that they may reveal evidence which can be used to impeach the testimony of [the People's witnesses]. . . . [A] defendant must put forth some factual predicate which would make it reasonably likely that documentary information will bear relevant and exculpatory evidence . . . [rather than] speculative anticipation that those records would provide information which he could use at trial to impeach the testimony of the [witnesses] in question."); Joseph F., supra at 754 (a party moving to unseal a transcript in order to impeach inconsistent statements a witness in that case may give in a civil proceeding "is insufficient to influence this court to exercise the rarely used inherent power to unseal the transcript of any part thereof in the teeth of the contrary public police expressed in CPL § 160.50"); Waterman, supra at 2 ("Plaintiff offers only his speculation that impeachment materials might be found in the [sealed] minutes. He does not state that he has evidence showing that defendant gave testimony there which contradicts testimony given in this action, let alone identify what that evidence might be. . . . Plaintiff has not shown a need great enough to entitle him to the [sealed] minutes.").
The reasons for these restrictions was more fully explained in Matter of the New York State Temporary Commission of Investigation, 155 Misc.2d 822, 826-27 (County Ct. Westchester Cty. 1992), in which that court held that:

[T]he moving party must make a compelling demonstration which must identify that without an unsealing, the ends of protecting the public cannot be accomplished. Another relevant concern in this analysis is how the records would be used by the requesting entity. . . . If the information sought in the sealed record is readily available from another source, this is a factor which may preclude access. . . . The court has discretion to release these records when, after balancing a public interest in disclosure against the one favoring secrecy, the former outweighs the latter (People v. Di Napoli, 27 N.Y.2d 229, 238 [1970]). One seeking disclosure must first demonstrate a compelling and particularized need for access (Matter of District Attorney of Suffolk County, 58 N.Y.2d 436, 446 [1983]).
Therefore, based on these abovementioned cases, there must be a compelling reason for this Court to use its inherent power to unseal the record under Indictment Number 6852/98. Clearly, this reason must find root in the interests of justice.
[*10]
The Court of Appeals noted that records that would otherwise be allowed to be unsealed pursuant to subdivision (1) (d) of CPL § 160.50, would still not be unsealed if such disclosure would, inter alia, "deprive a person of a right to a fair trial." Harper, supra at 767, citing Public Officers Law § 87 [2], CPLR § 3101 (b), (c). In so doing, the Court referenced the fact that the Discovery Article of the Criminal Procedure Law (CPL Art. 240) exists because the liberty interests at stake in criminal proceedings are more significant than in civil proceedings. See Harper, id. footnote two. Although this cited portion of Harper dealt with a court's inherent power to seal, in Patrick M., supra at 701, that court noted that the "power to seal records is widely recognized and grows out of that measure of discretionary authority courts enjoy with respect to their own records. . . . The same logic has been recognized as conferring the power to unseal upon courts in extraordinary circumstances to serve fairness and justice."
People v. White, 169 Misc.2d 89 (Sup Ct. Bronx Cty. 1996), relied on the cases of People v. Abedi, 159 Misc.2d 1010 (Sup Ct. New York Cty. 1994), and People v. Neuman, 104 Misc.2d 324 (Sup. Ct. Westchester Cty. 1980), in holding that the interests of justice required that the records of a criminal action remain unsealed despite being terminated in favor of the accused. In Abedi, the court stayed the sealing in that matter in the interests of justice because numerous other related proceedings could not otherwise be fairly and effectively resolved. See White, supra at 95, citing, Abedi, supra at 1014. Likewise, in Neuman, the court held that "in the interests of justice, the Special Prosecutor's audit and investigative reports should not be sealed" because they "were relevant to other jurisdictions' pending investigations of the defendant's far-flung and interrelated enterprises." White, supra at 94, citing, Neuman, supra at 328. The Neuman court further held that "a good faith nexus . . . was certainly established" between the case at issue and the open investigations and that it believed that its "decision reached herein will serve to expedite this process since it is this court's view that the interests of justice are served both by insuring the prosecutor a full and fair investigation as well as by affording the targets of the investigation the knowledge that a cloud of suspicion is not to hang over their heads forever." Neuman supra, at 329. The court in White noted that "the facts and circumstances of a particular case may require that sealing be stayed in situations beyond those in Abedi and Neuman." White, supra at 97, footnote five.
Similarly, in People v. Roe, 165 Misc.2d 554 (Sup. Ct. Bronx Cty. 1995), a case in which both criminal and civil actions were commenced against a defendant for an alleged scheme to defraud the New York State Medicaid system, the court held that, pursuant to CPL § 160.50 (1), the interests of justice warranted not sealing the criminal matter because those records "are essential to enable the State to meet its burden of proof in the civil case and should not be sealed for that reason." Roe, id. at 560, citing, Abrams v. Skolnik, 185 A.D.2d 407, 409 (3rd Dept. 1992).
Additionally, in People v. Lester, 135 Misc.2d 205 (Sup. Ct. Bronx Cty. 1987), a defendant who testified in the Grand Jury and had the case dismissed, was going to trial regarding a separate incident that occurred "within hours" of the dismissed matter. That court held that if the People receive notice of an alibi defense at trial, the Grand Jury minutes of the dismissed case may be unsealed so that the People may use them to impeach the defendant on cross-examination. Id. at 206-07. See also Matter of District Attorney of Suffolk County, 58 N.Y.2d 436 (1983); Anonymous, supra at 763; Lott, supra. 
[*11]Moreover, although not directly on point, in People v. Outlaw, 73 A.D.2d 677 (2nd Dept. 1979), the Second Department noted that it was proper to grant the motion of a defendant who pled guilty to unseal the records of his co-defendant who was acquitted after trial ten months before the defendant's plea and who was charged with acting in concert with the defendant. Another similar case is People v. Destine, 187 Misc.2d 702 (Dist Ct. Nassau Cty. 2001). In that case, after the co-defendant was acquitted in a separate trial, he granted access to his sealed case to a co-defendant who was to be tried separately, at which time the People moved to unseal those records on the basis that they were entitled to equal access. The Nassau County District Court held that if the defendant used those records to cross-examine the People's witnesses, he would be required to "turn over to the People the entire transcript of that witness' testimony." Destine, id. at 703. Additionally, that court also held that it was within the discretion of the trial judge as to whether to require the defense to turn over to the People any items contained in the sealed file which were put in issue by that witness' testimony." Destine, id. See also Maxie, supra at 303 (holding that partial unsealing of a case was proper because "[f]airness requires that the defendant have access to all material which may be necessary to a proper defense of the action in order to avoid a deprivation of its rights or property without due process of law").
Similarly here, it is within the interests of justice to assure that Mr. Brown receives a fair trial and that all material that falls under CPL Article 240, Brady (see Brady v. Maryland, 373 U.S., 83 S.Ct. 1194, 10 L.Ed.2d 215 [1963]), and Rosario (see supra), be provided to him. Witnesses that will almost definitely be called for the People gave sworn testimony regarding the same incident in the now sealed case. Clearly there is no readily alternative means by which to obtain this testimony. Moreover, unlike the situation present in Joseph M., supra, unsealing in the present case would not be a direct affront to protecting an exonerated individual from the unwarranted stigma that an employer could attach to dismissed criminal charges, which is the primary reason behind the 1976 amendments to CPL § 160.50. To the extent that Joseph M., supra, requires an exception to the general sealing requirement as created by the Legislature, the Legislature has so acted in allowing unsealing in the case at bar by enacting CPL § 240.45 (1) (a), which codified the rule set forth under Rosario, supra. Indeed, to not unseal such prior testimony of the People's witnesses would seriously impair Mr. Brown's Sixth Amendment right to confront his accuser. Although obtaining a waiver by the defendant under Indictment Number 6852/98 is the preferred alternative, given that it has proven unsuccessful and in light of the fact that the whereabouts of Karl L. are now unknown, Mr. Brown can only look to the Court for relief. As ensuring that he receives a fair trial and that his due process rights are not violated are clearly compelling interests, the motion to unseal the transcribed testimony under Indictment Number 6852/98 is granted.
CONCLUSION
Since the privilege of CPL § 160.50 may not be used to gain an advantage in a civil action, the Court finds that Ernesto Cruz has waived the protection afforded thereby in bringing suit alleging facts in a civil case which were the subject of a favorably terminated and sealed criminal proceeding. Likewise, inasmuch as CPL § 160.50 involves statutory and not substantive or constitutional rights, the inherent discretionary power of the Court extends beyond its enumerated provisions to grant appropriate relief to Rohan Brown to release sealed records when the interests of justice, as here, so mandate.
[*12]
ORDERED, that the motions by the Attorney General and Mr. Brown are granted to the extent of unsealing the transcribed proceedings under Indictment Numbers 1627/2000 and 6852/98.
The foregoing opinion constitutes the decision and opinion of the Court.
Dated: Bronx, New York
January 5, 2004
DOMINIC R. MASSARO,
Justice of the Supreme Court
Decision Date: January 05, 2004
Footnotes

Footnote 1:Pursuant to Criminal Procedure Law § 160.50, the full name of the individual who had the matter terminated in his favor, which erroneously appears in Mr. Brown's motion, has been omitted. Note that Mr. Cruz's name has not been omitted due to the fact that he is the named party who filed a Federal civil suit arising out of the matter which was terminated in his favor (see pp. 9-11, infra).

Footnote 2:Although accused of acting in concert, for reasons unrelated to this decision the defendant under Indictment Number 6852/98 and Mr. Brown are being tried separately.